IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| DR. ROBERT W. MALONE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00063-NKM/JCH |
| | ) | |
| | ) | |
| PETER R. BREGGIN, MD *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff, Dr. Robert W. Malone ("Plaintiff" or "Dr. Malone"), by counsel, respectfully submits this Memorandum in Opposition to the motions to dismiss for lack of personal jurisdiction and motions to dismiss pursuant to Rule 12(b)(6) filed by Defendants, Peter R. Breggin, M.D. and Ginger Ross Breggin (the "Breggins"), and Dr. Jane Ruby ("Ruby").

## I. INTRODUCTION

This is an action for defamation and insulting words. The case arises out of egregious and excessive online activity and repeated statements knowingly and persistently published by the Breggins and Ruby about Dr. Malone in internet articles, podcast videos and via social media (Telegram and Twitter). [*ECF No. 37 ("Am. Compl."), ¶ 1*]. The false and defamatory statements at issue targeted a Virginia citizen and were purposefully directed towards Virginia, going so far as to discuss the substance

of this Virginia lawsuit.  The statements at issue were transmitted to Defendants' Virginia subscribers and viewers, and published in Virginia by Defendants and their agents. [*Compl.,* ¶¶ *4, 5, 6*].  Dr. Malone alleges that Defendants are subject to specific jurisdiction in Virginia. [*Compl., ¶ 8*].  In an amended complaint filed on June 29, 2023, Dr. Malone seeks actual damages caused by Defendants' publication and republication of false and defamatory statements and insulting words.

The Breggins and Ruby have each filed motions to dismiss for lack of personal jurisdiction and pursuant to Rule 12(b)(6). [*ECF Nos. 42, 44, 46, 47*].

The matter is before the Court on Defendants' motions.  For the reasons stated below, Defendants' motions should be DENIED in their entirety.

## II.  **BACKGROUND**

Robert Malone is a licensed medical doctor living in Madison County, Virginia. He is a world-renowned scientist and expert in the field of mRNA technology.  He was the leading contributor to the science exploited by Pfizer and other pharmaceutical corporations to create the COVID-19 "vaccines".  Beginning in July 2022, the Breggins and Ruby began to publish false statements, defamatory implications and insulting words about Dr. Malone in internet articles, podcast videos and via social media (Telegram and Twitter) that persistently targeted Dr. Malone and were transmitted to subscribers and viewers in Virginia.  The Breggins, Ruby and their agents falsely accused Dr. Malone of fraud, disinformation, dishonesty, deception, lying to the American public, lack of integrity, immorality and ethical improprieties.  The incessant professional and personal attacks exposed Dr. Malone to public ridicule, scorn, and contempt, and severely prejudiced him in his profession and employment.  Dr. Malone alleges that Breggins' and

Ruby's statements are materially false and defamatory; that they were published with actual malice – knowledge of falsity or reckless disregard for the truth; and that he suffered presumed damage and actual injury because of the false statements and insulting words. [*Am. Compl., ¶¶ 1, 3, 10, 11, 12, 13, 16, 17, 19, 20*].

In support of Dr. Malone's allegation that Breggins and Ruby are subject to the Court's personal jurisdiction, the complaint alleges that the Breggins own and operate an active website, https://breggin.com/, on which, *inter alia*, they (a) prominently litigate their position in this lawsuit and their defenses to Dr. Malone's claims, (b) fundraise off this lawsuit by shamelessly soliciting donations from Virginians and others, (c) sponsor and publish the views of third-parties about this lawsuit and about Dr. Malone, (d) advertise Dr. Breggin's blogs and solicit subscriptions to his email "alerts", and (e) market, solicit and sell dozens of Dr. Breggin's books to consumers in Virginia and elsewhere. On the active website, the Breggins also produce and publish subscription radio and internet shows, including Refounding America TV, the "Breggin Hour", and Brighteon.TV. They use these "shows" to broadcast false and defamatory statements to listeners and viewers in Virginia and elsewhere. The Breggins also operate multiple social media properties which they use to follow Dr. Malone, solicit book sales from Virginians and others, and republish the false and defamatory statements at issue in this action. Finally, the Breggins also operate "America Out Loud", a website dedicated to informing America "of the evil politics and machinations of the Marxist Left." America Out Loud broadcast and published in Virginia the Breggins' false statements about Dr. Malone (described below). [*Compl., ¶ 4*]. Far from being the feeble victims portrayed in their pleadings, the Breggins are aggressive, serial defamers.

The complaint alleges that Ruby produces and broadcasts the "Dr. Jane Ruby Show" on the Stew Peters Network to over 436,000 subscribers in Virginia and elsewhere.  In addition to her Internet show, Ruby operates multiple social media accounts, including a Telegram account and a Twitter account with followers in Virginia and elsewhere, that Ruby uses to litigate this lawsuit, republish statements in Charlottesville, Virginia, and communicate with Dr. Malone in Madison, Virginia.  Dr. Malone asserts that Ruby uses her Internet show and social media accounts to broadcast false and defamatory statements into Virginia to subscribers and users who pay Ruby for her unlawful content. [*Am. Compl., ¶ 5*].  In addition to their direct contacts with Virginia, the complaint alleges that Breggins and Ruby act in concert with one or more agents believed to be in Virginia to publish false and defamatory statements about Dr. Malone. [*Id., ¶ 6*].

Dr. Malone alleges that his claims arise directly from and relate to Breggins' and Ruby's publication of false and defamatory statements in Virginia, where Dr. Malone suffered injury to his reputation. [*Id., ¶ 8*].

### III.  DISCUSSION

**A.  *Breggins and Ruby Are Subject To Personal Jurisdiction In Virginia***

When, as here, "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *id. Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Gilmore v. Jones*, 370 F.Supp.3d 630, 650 (W.D

Va. 2019) (quoting *Universal Leather, LLC v. Koro AR, SA*, 773 F.3d 553, 558 (4th Cir. 2014)).  In reviewing the matter, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005) (citations and quotations omitted); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).  "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, 2010 WL 1225620, at * 1 (E.D. Va. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).

For a Court to "assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  "Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). "A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Id.* "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in the state 'does not offend the traditional notions of fair play and substantial

justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   The requirements of the Due Process clause can be met through establishing either general or specific jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-415 (1984); *CFA Inst. v. Inst. Of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 fn. 15 (4th Cir. 2009).

Construing Dr. Malone's allegations in the light most favorable to him and drawing the most favorable inferences for the existence of jurisdiction, there is no question that the complaint makes a prima facie showing as to specific personal jurisdiction.

### 1.   ***Specific Personal Jurisdiction***

When a nonresident defendant uses the Internet to carry out the alleged defamation, courts

> "may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."

*ALS Scan, Inc. v. Digit Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002); *see Young v. New Haven Advoc.*, 315 F.3d 256, 263 (4th Cir. 2002) (noting that courts should consider the first two prongs together when the Internet activity involves posting on a website).

Dr. Malone's amended complaint alleges that Breggins and Ruby directed their extensive online activities into Virginia numerous times, including through one or more agents and instrumentalities in Virginia.   These activities create the instant causes of action for Dr. Malone, a Virginia medical doctor and scientist. *See Estate of Steele v.*

*Goodman*, 2022 WL 4274120, at * 4 (E.D. Va. 2022).  In *UMG Recordings v. Kurbanov*, the Fourth Circuit Court of Appeals held that the defendant's contacts with Virginia were sufficient to establish specific personal jurisdiction, where the defendant operated a website that was globally accessible and was "interactive to a degree", Virginians visited the website, and accessed the website and downloaded information from the website. 963 F.3d 344, 353-354 (4th Cir. 2020).  That's what we have here.  Personal jurisdiction is warranted in Virginia because Virginia is the "focal point" both of Breggins' and Ruby's publications and of the harm suffered.  Moreover, unlike the "passive" ISP-defendant in *ALS Scan*, 293 F.3d at 714, Breggins and Ruby wrote the articles, spoke in the videos and podcasts, and published both on platforms they own and operate and on others' networks. Lastly, Dr. Malone's claims against Breggins and Ruby arise directly from the publications. *Compare Gilmore*, 370 F.Supp.3d at 655 ("the 'focal point' of Creighton's publications was a Virginia event and citizen, making his publications of particular interest to a Virginia audience.").  Because of the taunting nature of their excessive publication of the false and defamatory statements – online ***and*** via social media – Breggins and Ruby knew or should have known that their inflammatory statements would reach Dr. Malone, causing substantial harm in Virginia. *Compare, e.g., Blue Ridge Bank, Inc. v. Veribanc*, 755 F.2d 371, 374 (4th Cir. 1985) (the defendant "obviously knew that Dorfman was going to write an article that included the allegedly libelous information about Blue Ridge and that the article could find its way into the Commonwealth of Virginia.  By requiring Dorfman to reveal his source of financial information Veribanc obviously expected to receive additional orders from customers who read the information in the article.  Because of this expectation Veribanc could reasonably expect to be hailed

into court, on an allegation of false information supplied to Dorfman by Veribanc, in any forum in which Dorfman's article appeared … Veribanc's fifty-seven contacts with its subscribers in Virginia add strength to the exercise of personal jurisdiction over Veribanc").

Since Dr. Malone filed suit, Breggins and Ruby have had no problem whatsoever publishing false statements in Virginia, directly and through their agents, inflaming and exacerbating the damage they already caused.  Indeed, Breggins and Ruby actively litigate this very case on the Internet, via podcasts published in Charlottesville, and via Breggins' active website, going so far as to publish confidential communications they have had with their Virginia attorneys.  Litigating this case in Virginia will not impose any burden on Breggins or Ruby.  And, it is beyond dispute that the Commonwealth of Virginia – Dr. Malone's home forum – has a significant interest in exercising jurisdiction over those who commit torts (defamation) within its territory. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State … New Hampshire may rightly employ its libel laws to discourage the deception of its citizens."). Lastly, litigating the case in Virginia will ensure that the dispute is resolved in a fair and efficient way in a legal forum chosen by Dr. Malone and a business forum (Virginia) regularly utilized by these Defendants.  The exercise of specific personal jurisdiction over Breggins and Ruby is constitutionally reasonable.

In *Keeton v. Hustler Magazine, Inc.,* a New York resident sued Hustler magazine (an Ohio corporation) in New Hampshire, claiming that she had been libeled in five issues of the magazine, which was distributed throughout the country, including in New

Hampshire, where Hustler sold 10,000 to 15,000 copies per month. Concluding that specific jurisdiction was present, the United States Supreme Court found that there was a connection between the circulation of the magazine in New Hampshire and damage allegedly caused within the State. The Court correctly held that "[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement." *Id*. at 776 (emphasis in original). Here, as in *Keaton*, false statements caused harm in Virginia, where the false statements were circulated. *Id.* at 777 ("The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977). The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.").

**B.** *__The Complaint Satisfies Rule 12(b)(6)__*

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, to meet the Rule 8 standard and survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Nadendla v. WakeMed*, 24 F.4d 299,

305 (4ᵗʰ Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *King*, 825 F.3d at 212.

### 1.    *Dr. Malone Plausibly Alleges A Claim of Defamation*

Under Virginia law, the elements of a claim of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013).  In assessing whether a plaintiff has stated a cause of action for defamation, it is important to observe that while the Virginia Supreme Court requires more specific pleading in certain cases, defamation cases are not among them. *See Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005) ("the usual standards of notice pleading apply in defamation cases.").

### a.    *Actionable Statements*

To be actionable, a statement must be "both false[1] and defamatory." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) (quoting *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203 (2005)).  At the motion to dismiss stage in a defamation case, "a court must accept as false any statements which the Complaint

---

[1]    As to the element of falsity, "[t]he common law of libel takes but one approach ... regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.* Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517 (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).  **The amended complaint alleges that Defendants' statements are materially false**. [*Compl., ¶ 16*].

alleges to be false." *Id.* (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).  "Because the Court presumes falsity at this stage, the key actionability question … is whether the statements referenced in the Complaint are defamatory." *Goulmamine*, 138 F.Supp.2d at 659.[2]

Defamatory language "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Schaecher v. Bouffault*, 290 Va. 83, 92, 772 S.E.2d 589 (2015) (citation omitted).  At common law, defamatory words that "prejudice [a] person in his or her profession or trade" are actionable as defamation *per se*. *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 132, 575 S.E.2d 858 (2003) (citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7, 82 S.E.2d 588 (1954) ("Every false and unauthorized imputation, spoken, written or printed which imputes to a business or professional man conduct which tends to injure him in his business or profession is libelous and actionable without allegation or proof of special damages.")); *Echtenkamp v. Loudoun County Public Schools*, 263 F.Supp.2d 1043, 1064 (E.D. Va. 2003) (statements that "could be construed to either imply or to state directly that plaintiff lacks integrity or is unfit for her profession" were actionable).

Importantly, the Virginia Supreme Court has repeatedly emphasized that in order to render words defamatory and actionable, it is not necessary that the defamatory charge be in express or direct terms, "but it may be made indirectly, and it matters not how artful

---

[2]    The determination whether an allegedly defamatory statement is false "ordinarily presents a factual question to be resolved by a jury." *Hyland v. Raytheon Tech. Serv. Co.*, 277 Va. 40, 48, 670 S.E.2d 746 (2009).

or disguised the modes in which the meaning is concealed if it is in fact defamatory. Accordingly, a defamatory charge may be made by inference, implication or insinuation." *Carwile*, 196 Va. at 7, 82 S.E.2d at 592; *see id. Hyland*, 277 Va. at 47, 670 S.E.2d at 750 ("Defamatory statements may include statements made by inference, implication, or insinuation.") (numerous citations omitted).

"Pure expressions of opinion, not amounting to 'fighting words,' cannot form the basis of an action for defamation." *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97 (1985) (statement that plaintiff was "inexperienced" was "pure expression of opinion"). "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion", *Fuste*, 265 Va. at 132, 575 S.E.2d at 861, and "rhetorical hyperbole, even if insulting, offensive, or otherwise inappropriate, is not actionable." *Choi v. Kyu Chul Lee*, 312 Fed.Appx. 551, 553 (4th Cir. 2009) ("the jury found in favor of Choi with regard to the statements describing Choi as a thug and a gangster.  On appeal, the appellants contend that those statements should be viewed, as a matter of law, as non-actionable opinion or hyperbole. We disagree.") (citation omitted).  The United States Supreme Court has not provided categorical protection for *all* expressions of opinion. Rather, the Supreme Court has held that a statement merits protection only if it "cannot 'reasonably [be] interpreted as stating actual facts about an individual.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (alteration in original) (quoting *Hustler Magazine, Inc. v. Falwell*, 495 U.S. 46, 50 (1988)).  To determine whether a statement posits facts, the United States Court of Appeals for the Fourth Circuit directs courts to look to the actual language used, as well as the context and general tenor of the statement. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich*, 497

U.S. at 21)).   The Supreme Court of Virginia similarly requires an examination of context. *Hyland*, 277 Va. at 47-48, 670 S.E.2d at 751 ("The requirement that an allegedly defamatory statement be considered as a whole also is vital to a determination of the truth or falsity of a defamation claim, because defamatory statements may be made by implication, inference, or insinuation.   Thus, the factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts.") (citations omitted).

In *Goulmamine v. CVS Pharmacy, Inc.*, the District Court observed that there are "two caveats to the 'opinions cannot be defamatory' rule."  First, "statements [of opinion] may be actionable if they have a provably false connotation and are thus capable of being proven true or false." 138 F.Supp.3d at 660. Second, a statement of opinion may be actionable when it "reasonably can be construed as a statement of fact" because "it is 'laden with factual content' and the underlying facts are allegedly false." *Id.*; *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 362 S.E.2d 32, 43 fn. 8 (1987).[3]   Bearing these two caveats in mind, the Court in *Goulmamine* held that many of the statements claimed to be "opinions" were actionable, "either because they may be proven false by an expert witness or because they are laden with factual content and the underlying facts are alleged to be false." *Id.* (statements of opinion regarding Goulmamine or Goulmamine's relationship with his patients: "he is bad news," variations on "you should find another doctor" or "your doctor won't be in business much longer," and "he may lose his license"

---

[3]        In *Lipscomb*, the statements characterized plaintiff, a school teacher, as "disorganized, erratic, forgetful, and unfair".  The Virginia Supreme Court held that these statements were actionable as defamation *per se*. 234 Va. at 282-283, 362 S.E.2d at 43.

were actionable); *compare Fuste*, 265 Va. at 133, 575 S.E.2d at 861 ("the alleged statements that Drs. Fuste and Vanden Hoek 'abandoned' their patients and that there were 'concerns about their competence' not only prejudice the doctors in the practice of their profession, but also contain 'a provably false factual connotation.'") (citation omitted); *Cashion v. Smith*, 286 Va. 327, 337, 749 S.E.2d 526 (2013) ("statement that the patient 'could have made it with better resuscitation' directly attributes the patient's death to Dr. Cashion, insinuating that he either failed to perform some action necessary to the patient's recovery or acted affirmatively to prevent it. Insinuations may constitute defamatory statements."); *see also Gilmore*, 370 F.Supp.3d at 673 ("Creighton's insinuation that Gilmore had  foreknowledge of a violent attack and filmed it for clandestine political purposes is  precisely the sort of factual assertion that would tend to 'harm the reputation of another as to lower him in the estimation of the community,' 'deter third persons from associating' with him, and make him 'appear odious' or 'infamous.'") (quotation and citation omitted).

Applying these principles, it is apparent that the false statements and implications published by Breggins and Ruby about Dr. Malone are actionable as defamation and defamation by implication.  Paragraphs 6, 10 and 13 of the amended complaint describe statements which, accepted as true, accuse or impute to Dr. Malone criminal, immoral and unethical conduct and cast him in an odious, ridiculous and contemptuous light.  The words used by Breggins and Ruby, the context in which the statements were published, the tone and the surrounding circumstances demonstrate that the Defendants intended or endorsed the defamatory meaning of the statements.

b.   _**Fault**_

The requisite intent a plaintiff must prove in a defamation action depends upon the plaintiff's status as a private individual or public figure, and the damages sought. Under Virginia law, a private individual may recover upon proof by a preponderance of the evidence that the defendant either knew the publication to be false, "or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based."   The negligence standard is applicable to "media and non-media defendants alike". *Gazette, Inc. v. Harris*, 229 Va. 1, 15, 325 S.E.2d 713 (1985).   As to a public figure, on the other hand, a plaintiff must plausibly allege that the defendant made the statement with "actual malice"—that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) (cited in *Jordan*, 269 Va. at 577, 612 S.E.2d at 207)).   "To recover punitive damages, all defamation plaintiffs must show actual malice". *Jordan*, 269 Va. at 577, 612 S.E.2d at 207 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974)); *Vaile v. Willick*, 2008 WL 294477, at * 6 (W.D. Va. 2008) ("there is no heightened pleading standard for punitive damages, only a 'short and plain statement of the claim' under Federal Rule of Civil Procedure 8(a). Plaintiff has alleged that Defendants acted with actual malice in sending the false and defamatory letters, meaning Defendants published the statements with knowledge of their falsity or with reckless disregard for the truth.  These allegations plainly state a claim for punitive damages.").

"The existence of actual malice may be shown in many ways.  As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the

relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration." *Herbert v. Lando*, 441 U.S. 153, 164 fn. 12 (1979); *see also Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) ("Although courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry.") (citations omitted).

As *Herbert* suggests, actual malice is typically shown by an "accumulation" of evidence and inferences. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2nd Cir. 2000) (in order to infer actual malice, the facts alleged "should provide evidence of 'negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice.'") (quoting *Bose Corp. v. Consumers Union of the United States*, 692 F.2d 189, 196 (1st Cir. 1982) (emphasis added in original)); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2nd Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity."); *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly

provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact.").  Because actual malice "is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted," *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2nd Cir. 1987), a defendant cannot "automatically insure a favorable verdict by testifying that he published with a belief that the statements were true." *St. Amant*, 390 U.S. at 732.

In paragraph 20 of his amended complaint, Dr. Malone alleges that Breggins and Ruby knew the statements were false and harbored serious doubts as to the veracity of the statements.  First, they researched and reviewed Dr. Malone's website, substack, public appearances and his professional observations and comments prior to publication of the statements, including in the Global COVID Summit Declaration IV.  Breggins and Ruby knew that Dr. Malone did not hold the views and beliefs they said he held and he did not take the actions that Breggins and Ruby ascribed to him.  In other words, Breggins and Ruby fabricated the statements out of whole cloth with the intent to injure him. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination")].  Second, Dr. Malone's stature, which was well-known to Breggins and Ruby, supports his contention that Breggins and Ruby knew that the statements were so improbable that only a reckless person would put them in circulation. *St. Amant*, 390 U.S. at 732 ("Professions of good faith will be unlikely to prove persuasive, for example, … when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation."); *US Dominion, Inc. v.*

17

*Powell*, 554 F.Supp.3d 42, 63 (D. D.C. 2021) ("a reasonable juror could conclude that the existence of a vast international conspiracy that is ignored by the government but proven by a spreadsheet on an internet blog is so inherently improbable that only a reckless man would believe it.").   Third, Dr. Malone alleges that Breggins and Ruby brazenly republished the false and defamatory statements about Dr. Malone even after they were notified that Dr. Malone contended the statements were false and defamatory.   Indeed, Breggins and Ruby continue to attack Dr. Malone even after this lawsuit was filed.   This is evidence of actual malice. *See, e.g., Nunes v. Lizza*, 12 F. 4th 890, 901 (8th Cir. 2021) ("'Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard.'").

### 2.    *Dr. Malone's Insulting Words Claim*

Section 8.01-45 of the Virginia Code (1950), as amended, provides that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace."   "The design of the statute is to prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment therefor, and by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury". *Hines v. Gravins*, 136 Va. 313, 112 S.E. 869, 871 (1926) (defendant's statements implied that plaintiff was a "crooked and dishonest person" – demurrer to insulting words claim was properly overruled).

"[A]n action for insulting words ... is treated precisely as an action for slander or libel, for words actionable *per se,* with one exception, namely, no publication is necessary." *Goulmamine*, 138 F.Supp.3d at 669 (quoting *O'Neil v. Edmonds*, 157 F.Supp. 649, 651 (E.D. Va. 1958)).   There is no requirement under the statute that the words be exchanged "face-to-face". *Tika v. Jack*, 2022 WL 2955153, at * 9 (W.D. Va. 2022). "Whether or not the words used are insulting is a jury question, depending on whether from 'their usual construction and common acceptation' they may be 'construed as insults, and tend to violence and breach of the peace.'   The motive which actuated the person using the words is not material, except upon the questions of malice and the measure of damages." *Cook v. Patterson Drug Co.*, 185 Va. 516, 521, 39 S.E.2d 304 (1946).   In *Allen & Rocks, Inc. v. Dowell*, the Virginia Supreme Court clarified that § 8.01-45 "plainly requires that the words used must not only be insults, but they must also 'tend to violence and breach of the peace.'" 252 Va. 439, 441, 477 S.E.2d 741 (1996). The defendant (Rocks) made the following statements about the plaintiff (Dowell):

> "Rocks stated that Dowell's accomplishments and interpersonal skills with management were unsatisfactory; that Dowell did not communicate well with Rocks; that Dowell had been discharged because of his performance; and  that Rocks, were he in the shoes of a potential employer, would not hire Dowell."

The Supreme Court ruled that these particular words were not such "as tended to violence or breach of the peace." 252 Va. at 443, 477 S.E.2d at 743; *but compare Jennings v. Jones*, 2005 WL 4827429, at * 1, 3 (Petersburg Cir. 2005) ("insinuating to the Plaintiffs either the incompetent or illegal performance of their duties, were such as may have provoked reasonable persons to breaches of the peace, and the Plaintiffs have so alleged in their Motions for Judgment" … [T]he alleged statements are actionable under the 'fighting words' statute, Va.Code § 8.01-45.  They meet all the requirements of common-

law defamation, and it is possible that a reasonable jury might find that the statements were such as might fairly be expected by reasonable people to tend towards violence or a breach of the peace.").

Dr. Malone is a medical professional and a renowned scientist. Breggins' and Ruby's words are insulting *per se* and they tend to violence and breach of the peace. They accuse Dr. Malone of being responsible for COVID. They say he created a technology that he knew would kill people. They claim that Dr. Malone is an "apologist for political mass murderers". They accuse Dr. Malone of fraud and grifting (theft).[4] [*Am. Compl., ¶¶ 29, 29, 30*]; *Waddle v. Claughton*, 2019 WL 1049388, * 5 (W.D. Va. 2019) (Because defendant stated that "Plaintiff committed a criminal offense involving stealing, it is defamatory *per se* and therefore insulting *per se*.") (citing *Trail v. Gen. Dynamics Armament & Tech. Prods., Inc.*, 697 F.Supp.2d 654, 658 (W.D. Va. 2010) (noting that "the Virginia Supreme Court's holdings ... demonstrate that false accusations of a crime are 'insulting and [tend] to violence and breach of the peace.'" (quoting *Zayre of VA, Inc. v. Gowdy*, 207 Va. 47, 50, 147 S.E.2d 710 (1966) ("The words uttered by defendant's security officer, while he was engaged in the ordinary course of his employment and in connection therewith, carried an imputation that the two young girls had stolen merchandise from the store, and that he was accusing them of theft. Hence the evidence was sufficient to support the jury's finding that the girls had been

---

[4]    Readers of Breggins' and Ruby's statements could reasonably find that they were attempting to communicate a true statement of fact, *i.e.*, that Dr. Malone stole from his supporters, gained his funds illicitly, and/or that he is a scam artist who has engaged in fraud or trickery to obtain money or goods from people. *See Meyers v. Tempesta*, 2013 WL 93025, at * 8 (Cal. App. 4th DCA 2013) (accusation that plaintiff is a "grifter" could have been construed by a reasonable reader to suggest a provably true fact).

falsely accused of larceny and that the words used by the security officer, from their usual construction and common acceptation, were insulting and tended to violence and breach of the peace.")).

**C.**     ***Section § 8.01-223.2 Does Not Immunize The Defendants***

Section 8.01-223.2(A) of the Virginia Code provides that a person "shall be immune from tort liability if the tort claim is based solely on statements … regarding matters of public concern that would be protected under the First Amendment of the United States Constitution made by that person that are communicated to a third party".

***Importantly***, § 8.01-223.2(B) provides that "the immunity provided by this section shall not apply to any statements that the declarant knew ***or should have known*** were false or were made with reckless disregard for whether they were false." (Emphasis added). Thus, § 8.01-223.2 provides a qualified immunity.

Defendants' motion to dismiss pursuant to § 8.01-223.2 should be denied for several reasons.  First, as demonstrated above, the immunity provided by § 8.01-223.2 does not apply because Breggins' and Ruby's statements were made with actual ***or*** constructive knowledge that they are false or with reckless disregard for whether they are false. *See, e.g., Steele v. Goodman*, 382 F.Supp.2d 403, 427 (E.D. Va. 2019) ("the Amended Complaint is replete with assertions that Goodman made the multitude of statements with actual knowledge of their falsity"); *Vivera Pharmaceuticals, Inc. v. Gannett Co., Inc.*, 2021 WL 6550461 at * 4 (Fairfax Cir. 2021) ("Even if the statements are privileged, Vivera's claims should not be dismissed because the complaint properly alleges malice as described above.  Therefore, it would be premature to dismiss Vivera's claims under the theory of qualified privilege.").  Second, the analytical format for

21

interpreting § 8.01-223.2 "follows the Virginia Supreme Court's model for qualified privilege." *Alexis v. Kamras*, 2020 WL 7090120, at * 21 (E.D. Va. 2020).   Whether the privilege is overcome by virtue of a defendant's improper mental state (i.e., a reckless disregard for the truth or actual or constructive knowledge of a statement's falsity) "**is a jury question**". *Id.* ("Here, the Court finds that statutory immunity does attach to the statements made by Kamras; however, the question of whether Kamras lost that immunity by virtue of an improper mental state is a question of fact that should go to a jury.") (emphasis added).

Here, as in *Kamras*, Dr. Malone is entitled to discovery and a trial by jury on the affirmative defense of qualified immunity under § 8.01-223.2.

## CONCLUSION

Dr. Malone, like Justices Gorsuch and Thomas and Senator Mark Warner and many others, believes that the internet and social media is out of control, and that defamation has become a "profitable" business model for some, a way to attract subscribers and sell books.   There is no constitutional value in defamation.   It must be stamped out.   Unfortunately, litigation is the only answer.   Dr. Malone sent Breggins and Ruby a cease and desist.   They refused to stop.

For the reasons stated above and at the hearing of this matter, Dr. Malone respectfully requests the Court to deny Defendants' motions to dismiss.


DATED:      July 27, 2023


Signature of Counsel on Next Page


22

DR. ROBERT W. MALONE

By: _/s/ Steven S. Biss_
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:  (804) 501-8272
          Facsimile:  (202) 318-4098
          Email:  stevenbiss@earthlink.net

          *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2023 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: _/s/ Steven S. Biss_
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:  (804) 501-8272
          Facsimile:  (202) 318-4098
          Email:  stevenbiss@earthlink.net

          *Counsel for the Plaintiff*