**IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| DR. ROBERT W. MALONE )<br><br>    **Plaintiff** )<br><br>v. )<br><br>PETER R. BREGGIN, MD. )<br>GINGER ROSS BREGGIN, )<br>AMERICA OUT LOUD, )<br>DR. JANE RUBY )<br><br>And )<br><br>RED VOICE MEDIA )<br><br>    **Defendants.** )<br>——————————————— ) | **Case Number: 3:22-cv-63** |

<u>**DEFENDANTS DR. PETER R. BREGGIN AND GINGER R. BREGGIN'S
REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS.**</u>

COME NOW, Dr. Peter R. Breggin (hereinafter "Dr. Breggin") and his wife

Ginger R. Breggin (hereinafter "Mrs. Breggin") (collectively, "the Breggins"), by

counsel, and submit the following Reply to Plaintiff's Memorandum In Opposition To

Defendants' Motions To Dismiss.

## BACKGROUND

Both the Plaintiff and the Breggin Defendants are involved in the field of

medicine and are currently a part of the public discussion regarding the science and

politics of both the handling of the worldwide coronavirus pandemic, and COVID-19

vaccine. Plaintiff Robert Malone filed his lawsuit against the Breggins, alleging that he is

1

entitled to over twenty-five million dollars ($25,350,000.00) in damages because he

asserts that the Breggins "and Ruby and their agents falsely accused Dr. Malone of fraud,

disinformation, dishonesty, deception, lying to the American public, lack of integrity

immorality, and ethical improprieties." (Pl. Am. Compl. ¶ 1).  Dr. Malone is a licensed

medical doctor living in Madison County, Virginia.  He asserts that he "is an

internationally recognized scientist/physician and the original inventor of mRNA

vaccinations as a technology, DNA vaccination, and multiple non-viral DNA and

RNA/mRNA platform delivery technologies.  (Pl. Am Compl. ¶ 3). He was the "leading

contributor to the science exploited by Pfizer and other pharmaceutical corporations to

create the alleged 'vaccines' for the novel coronavirus ("COVID-19")." (Pl. Am. Compl.

¶ 1).

The Defendants Peter R. Breggin MD and his wife Ginger Breggin are citizens

and residents of New York. Dr. Breggin is a lifelong reformer in the field of medicine

and is known as "The Conscience of Psychiatry" for his criticism of biological psychiatry

and his promotion of more effective, empathic, and ethical forms of psychological,

educational, and social approaches to people with emotional suffering and disability. He

graduated from Harvard College with Honors and his psychiatric training included a

Teaching Fellowship at Harvard Medical School. Following his training, he became a

Full Time Consultant in the U.S. Public Health Service at NIH, assigned to the National

Institute of Mental Health. Since then, he has taught at several universities, including

Johns Hopkins, George Mason, and the University of Maryland, as well as at the

Washington School of Psychiatry.  Dr. Breggin is the author of more than 20 medical and

scientific texts, as well as popular books, including the bestseller and highly-

documented *Talking Back to Prozac*. Since 2020, Dr. and Mrs. Breggin have been involved in the public discussion regarding a complete examination of the real science surrounding COVID-19 and the efficacy of the resulting vaccine and its effect on humanity throughout the world.  They have published numerous articles on the subject, and have participated on panel discussions, media interviews and appeared on podcasts and other social media platforms to discuss their views.

In his Amended Complaint, Dr. Malone alleges that the Breggins defamed him (by themselves and through their "agents" and/or "co-conspirators") when they supposedly made false statements about him in the public discussion over the coronavirus vaccine (Count I), defamed him by implication because the allegedly defamatory statements made in internet articles, podcast videos and on social media platforms (referred cumulatively to by Plaintiff as "the Statements" in his Amended Complaint) were delivered by the Breggins with the "strong gist and implication… that Dr. Malone is intentionally dishonest, deceitful, immoral, unethical and dangerous, and that he is unfit to practice medicine." (Pl. Am. Complaint, ¶ 23) (Count II).  Dr. Malone also alleges that the Breggins used "insulting words, in the context and under the circumstances in which they were spoken and written" with the intent to incite violence and a breach of the peace. (Pl. Am. Comp. ¶ 28-30) (Count III).

The Breggins filed motions to dismiss Malone's Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Malone has now filed his Memorandum in Opposition to Defendants' Motions To Dismiss, and this reply follows.

**ARGUMENT**

While Dr. Malone ("Malone") cites numerous cases regarding the subject matter at issue currently before the court in his memorandum, he fails to make a <u>prima</u> <u>facie</u> showing sufficient to establish the jurisdiction of this Court to hear his claims, and he utterly fails to overcome the deficiencies in the three causes of action themselves.

I.      **The Plaintiff Has Failed to Establish Personal Jurisdiction Over The Breggins.**

Malone asserts that "[p]ersonal jurisdiction is warranted in Virginia because Virginia is the 'focal point' both of Breggins' and Ruby's publications and of the harm suffered," and that "[b]ecause of the taunting nature of their excessive publication of the false and defamatory statements – online and via social media – Breggins and Ruby knew or should have known that their inflammatory statements would reach Dr. Malone, causing substantial harm in Virginia (Malone Mem. p. 7). His reliance upon the case law he cites to support this supposition is misplaced. In *UMG Recordings, Inc. v. Kurbanov*, <u>963 F.3d 344, 355</u> (4th Cir. 2020), a Russian citizen was sued in Virginia for running an internet website that allowed music piracy internationally, but had significant documented use of the website by Virginia visitors who he specifically targeted through the website's 3rd party advertising. The Fourth Circuit found "more than sufficient facts to conclude that [Defendant] Kurbanov has purposefully availed himself of the privilege of conducting business in Virginia and thus had a 'fair warning' that his forum-related activities could 'subject [him] to [Virginia's] jurisdiction.'" *Id.* at 353 (quoting *Burger King Corp. v. Rudzewicz*, <u>471 U.S. 472</u> (1985)). Unlike the case at bar, the Court found Defendant Kurbanov's contacts with Virginia were "plentiful," noting the volume of Virginia-based visitors to the websites (more than half a million during the relevant period) and the repeated interactions of these visitors with the Websites. <u>Id.</u> The Fourth Circuit also rejected

4

Defendant Kurbanov's "attempt to distance himself from this commercial arrangement" between the websites and Virginians. *Id.* It found that Defendant Kurbanov "facilitates targeted advertising by collecting and selling visitors' data" and that it was "immaterial" whether it was he or the third-party advertisers who actually targeted Virginians with advertisements on the websites. *Id.* at 354. While Malone believes that the personal jurisdiction issue in this matter fits squarely with the *Kurbanov* analysis, it does not. Contrary to what Malone wants this Court to believe, the *Kurbanov* Court clearly requires more than just a showing that a defendant foreign to Virginia operates a "website that was globally accessible and was interactive to a degree, Virginians visited the website and downloaded information from the website" in order to vest personal jurisdiction over them. (Malone Memo., p. 7).

Here, the Breggins have no such website or social media platform like the one analyzed in *Kurbanov* to determine the issue of personal jurisdiction. First, Malone has not demonstrated (as was proven in *Kurbanov* ) that the Breggins had a significant Virginia-based audience to their websites, videos, books and/or publications written by the Breggins. Second, Malone has not alleged, in either his Amended Complaint or in his supporting memorandum, that the Breggins utilized a 3rd party advertising platform on their websites or social media accounts that specifically targeted advertising to a Virginia audience, unlike the arrangement found in *Kurbanov,* or that they profited from the targeted advertising and the collection of personal data from its Virginia visitors. In fact, the Breggins don't utilize any such advertising platform that would target a particular state, nor do they sell any data information gleaned from the visitors to their platforms. (Breggins Declaration, ¶ 5).

Moreover, Malone's claim that "Virginia is the 'focal point' both of Breggins' and Ruby's publications" is wholly without factual support. The only thing that connects this case to

Virginia is the fact that Dr. Malone lives in the Commonwealth, and either read or heard these statements while he was (presumably) in Virginia, and nothing more; and, Malone's belief that the "taunting nature" of their statements demonstrates that they should have known that their statements "would reach Dr. Malone...in Virginia" is of no legal import and is completely insufficient to create personal jurisdiction over Dr. and Mrs. Breggin by this Virginia Court. And, Malone's factually unsupported statement that since he filed this lawsuit the "Breggins and Ruby have no problem....actively litigat[ing] this very case on the Internet, via podcasts published in Charlottesville and via Breggins' active website" does not now somehow confer the Court's jurisdiction over the Breggins. Any public comments made by the Breggins about this litigation are not only within their right to do so, but also are not indicators of personal jurisdiction, especially when they are released on the same public forums that seek a worldwide audience and not are not specifically targeted to a Virginia audience.[1]

Ultimately, Malone does not bring to this Court any evidence that would give rise to personal jurisdiction of this Court over the Breggins. Rather, and as evidenced by the Breggins' Declaration, they lack the "minimum contacts" necessary to invoke jurisdiction in this case. Additionally (and contrary to Malone's assertion), litigating this case will impose burdens upon the health of the Breggins that make it constitutionally unreasonable for them to be subject to defending this matter in Virginia. (Exhibit 1, Breggins' Declaration, ¶ 6). Therefore, Malone's Amended Complaint should be dismissed for a lack of personal jurisdiction over the Defendants.

## II. Plaintiff Fails to State Proper Claims For Defamation and Defamation By Implication.

---

[1] Malone's claim that the Breggins operate "America Out Loud" website is patently false, as it is merely a media platform that the Breggins appear on, but do not own or operate. The only website that they own or have any control of is www.breggin.com.

As stated previously, both the Plaintiff and the Defendants are public figures engaged in a great debate over the COVID-19 disease, how our government officials handled the shut-down of society for a period during the pandemic, and the efficacy of the vaccine imposed upon the population by governments all over the world. This vigorous scientific debate continues to this day, and it involves reason, passion, and a constant analysis by people of the scientific evidence and past governmental actions. There has not, to this day, been any absolute and uncontroverted conclusions in this debate, as both the scientific evidence and government actions have been interpreted differently by various scholars and scientists on a near constant basis. This quest for the truth is still ongoing, and the stated opinions of each side, while they may conflict, are all protected by the First Amendment. But as this debate rages on, we are reminded by the Court in *McCullough v. Gannett Co.*, that "it is not this Court's job to pick sides in a scientific debate," 2023 WL 3075940 at *7, because there remains a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks" upon the people who participate in the debate forum. *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964). (See also, *Immanuel v. Cable News Network, Inc.* 2022 WL 3030290 at *1: "Courts do not use defamation law to decide or cut short arguments over unsettled questions of what medication best or most safely prevents or treats disease."). It is clear that the statements cited by Malone as the basis of his defamation claims against the Breggins emanate from the open and public debate over the COVID-19 pandemic and the resulting vaccine are merely opinions put forth in that great debate. A debate in a free society always has more than one position, and while Malone may not like the Breggins' position, and most certainly might not agree with their position, the Breggins' stated position is nevertheless protected free speech that is not subject to Court

intervention.  Simply put, the parties to this litigation are engaged in non-actionable "academic disputes."  Dr. Malone admitted as much on his GETTR social media account when he posted: "I regret having to write this, but I continue to be pestered regarding Peter Breggin's criticism of Mattias Desmet and his book.  As far as I am concerned, this is concern trolling on the part of Dr. Breggin and his followers…..I have facilitated direct communication between them.  I want nothing to do with this, it is between them…..I am not in the business of facilitating nor exploiting *academic disputes*." (@rwmalonemd account on GETTR, posted on August 31, 2022 at 11:07 a.m.) (Emphasis added) (Exhibit 2).

Also, Malone's claims that "Breggins and Ruby fabricated the statements out of whole cloth with the intent to injure him" are likewise unsupported. (Pl. Memo, p.17).  In their Memorandum in support of their Motion to Dismiss pursuant to Rule 12(b)(6), the Breggins meticulously examine each of the allegedly defamatory statements attributed to them in great detail, demonstrating why each statement is not fabricated, not made with the intent to injure Dr. Malone, and therefore not actionable.[2] All sixteen statements cited by Malone against the Breggins again arise from a worldwide debate (that he is an active participant in), and they are not born out of "whole cloth," but rather reflect their position and opinions regarding certain issues that are relevant in the public discussion of the aftermath of the COVID-19 pandemic. Malone has failed to show that the Defendants have acted with malice (as all parties agree is required in this type of defamation claim), and Malone's interpretation that others who have openly agreed with the Defendants' statements in the same public debate forum must therefore

---

[2] The Breggins re-incorporate all arguments in their Memo in support of their 12(b)(6) motion regarding each allegedly defamatory statement as if stated herein. (Breggins Memo, Section II, A and B).

be engaged in a "conspiracy" to defame him is entirely without merit.[3] The mere fact that others

may agree with the Breggins' position appears to be foreign to Dr. Malone, as it is clear from his

pleadings that he is entirely certain that his position is the correct one and therefore it is not open

to either interpretation or debate by third parties. But alas, his mere belief of being right does not

blossom into actionable defamation just because someone dares to think differently than him,

and Malone cannot be permitted to create an intentional "chilling effect" on free speech through

this litigation on anything (and anyone) that contradicts his viewpoint.[4]

### III.    The Insulting Words Claim Is Legally Insufficient.

Malone offers no more factual insight in his memorandum that would strengthen his

claim against the Breggins for "Insulting Words." Malone claims in his memo that "Breggins'

and Ruby's words are "insulting *per se*" and therefore are "fighting words" is also unsupported.

(Pl. Memo, p.20). Each of the sixteen statements made by the Breggins have been shown that

they are not words that amount to *per se* defamation, and most certainly were not of the type to

move reasonable people towards physical violence or a breach of the peace. Malone's

allegations that Breggins' statements accuse "Dr. Malone of being responsible for COVID" are

not true; his claim that the Breggins stated that "he created a technology that he knew would kill

people" is not true; his claim that they said that he was an "apologist for political mass

murderers" is inaccurate; and, his claim that the Breggins accused "Malone of fraud and grifting

---

[3] Malone wildly contends in his Amended Complaint that the Breggins are now engaged in a conspiracy with Defendant Dr. Ruby, a gentleman named Paul Alexander and the "Stew Peters Network" in order to "attack" Malone (See Amended Complaint, ¶ 6, and footnotes 2 and 3), when in fact all the others, on their own accord and not in concert with the Breggins, dared to agree with Dr. Breggin's positions.

[4] "If I can win these lawsuits (and that is a big 'if'—defamation lawsuits are very hard to win) then **this will hopefully have a chilling effect** on the corporate media + internet/social media defamation business model that so many pursue – because its profitable." Dr. Robert W. Malone Tweet, 3/27/23, at 6:53 pm. (Emphasis Added)

(theft)" cannot be found in any of the statements cited by him in his Complaint, and no such statement has ever been uttered by either Breggin about Dr. Malone. *Id.*

## IV.    Section §8.01-223.2 Prevents This Litigation from Moving Forward.

Finally, Malone asserts that Virginia's Anti-SLAPP laws do not immunize the Defendants because the statute itself does not protect those statements where the "declarant knew or should have known were false or were made with reckless disregard for whether they were false" (Section §8.01-223.2 (B)). He states that since he has (in conclusory language unsupported by fact) asserted in his Amended Complaint that the statements made by the Defendants were ones that the Defendants knew were false or made with a reckless disregard for the truth, that this should be a sufficient shield against the effects of Virginia's Anti-SLAPP law.

It is without question that the Breggins' statements cited in Malone's Amended Complaint are solely "matters of public concern" that are protected as free speech under the First Amendment because they originate from the COVID-19 debate, and are in response to assertions made by Dr. Malone in the very same public forums – the health freedom movement and the differing opinions on the COVID-19 pandemic, the safety of the vaccines produced, and Dr. Malone's concept (and opinion) of mass formation psychosis as it relates to how humans responded to the crisis. "Statements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false," and as such, opinion statements consequently lack malice on the behalf of the speaker. *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.Ed.2d 203, 206 (2005). A review of the sixteen statements attributed to the Breggins clearly reveals that five of the statements are not statements made by the Breggins, and eleven statements that can be attributed to the Breggins are unequivocal statements of opinion. One cannot assert, let alone infer, that the five statements that were not uttered by the Breggins

contained malice on their part, and because the other eleven statements cannot be objectively characterized as either true or false because they are opinions of the speaker(s), they cannot possibly have been made with a knowledge of their falsity by those speakers. Therefore, the Amended Complaint is barred by Virginia Code §8.01-223.2.

WHEREFORE, for the foregoing reasons, and for those reasons set forth in their Memoranda in Support of their Motions To Dismiss Pursuant to Rules 12(b)(2) and (6) and at any hearing on the matter, *ore tenus*, your Defendants Dr. Peter and Ginger Breggins respectfully pray that their motions be granted, and that they be granted any further relief, including but not limited to the award of attorney's fees, that this Court deems just and appropriate under the circumstances.

Respectfully Submitted,

PETER R. BREGGIN, MD.
GINGER ROSS BREGGIN
By Counsel

By /s/ William M. Stanley
William M. Stanley, Esq. - VSB# 37209
THE STANLEY LAW GROUP, PLLC
13508 Booker T. Washington Hwy.
Moneta, Va. 24121
p. 540-721-6028
f. 540-721-6405
bstanley@vastanleylawgroup.com

11

## CERTIFICATE

I hereby certify that on the 3rd day of August, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272 Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
Counsel for the Plaintiff

By /s/ William M. Stanley