**IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

**DR. ROBERT W. MALONE**

**Plaintiff**

**v.** **Case Number: 3:22-cv-63**

**PETER R. BREGGIN, MD.
GINGER ROSS BREGGIN,
AMERICA OUT LOUD, AND
DR. JANE RUBY,**

**Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANTS BREGGINS MOTION FOR THE AWARDING OF ATTORNEY'S FEES AFTER DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONSAL JURISDICTION PURSUANT TO RULE 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants Dr. Peter R. Breggin, MD and Ginger Ross Breggin (collectively, "the Breggins," or "the defendants"), file the following Memorandum in Support of their Motion for the Awarding of Attorney's Fees after their Motion to Dismiss the Plaintiff's Amended Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure was granted by this Court on December 11, 2023.

**BACKGROUND**

Plaintiff Dr. Robert Malone ("Malone," or "Plaintiff") filed his original three-count lawsuit against the Breggins in the federal district court in the Western District of Virginia, on October 30, 2022, alleging that he was entitled to over twenty-five million dollars



THE STANLEY LAW GROUP
SLG

($25,350,000.00) in damages, asserting that the Breggins "and Ruby and their agents falsely accused Dr. Malone of fraud, disinformation, dishonesty, deception, lying to the American public, lack of integrity immorality, and ethical improprieties." (Pl. Compl. ¶ 1). In response, the Defendants Breggins and Dr. Ruby both filed Motions to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Malone had improperly filed his Complaint in Virginia, and that he failed to properly state a cognizable cause of action. But rather than respond to the motions by the defendants, Malone's counsel at the time chose to file an Amended Complaint, which kept the same counts, but added additional facts to the original Malone Complaint in a futile effort to bolster his three original causes of action.

In that Amended Complaint, Dr. Malone alleged, as his did before, that the Breggins defamed him (by themselves and through their "agents") when they supposedly made false statements about him in the public discussion over the coronavirus vaccine (Count I), defamed him by implication because the allegedly defamatory statements made in internet articles, podcast videos and on social media platforms (referred cumulatively to by Plaintiff as "the Statements" in his Amended Complaint) were delivered by the Breggins with the "strong gist and implication… that Dr. Malone is intentionally dishonest, deceitful, immoral, unethical and dangerous, and that he is unfit to practice medicine." (Pl. Am. Complaint, ¶ 23) (Count II). Dr. Malone also alleged that the Breggins used "insulting words, in the context and under the circumstances in which they were spoken and written" with the intent to incite violence and a breach of the peace. (Pl. Am. Comp. ¶ 28-30) (Count III).

As they had done with Malone's original Complaint, the Breggins filed new motions to dismiss Malone's Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6)



THE STANLEY LAW GROUP
SLG

of the Federal Rules of Civil Procedure. Malone filed a Memorandum in Opposition to Defendants' Motions To Dismiss, and the Breggins filed replies to the Malone Memorandum. This Court heard arguments by counsel on these motions, and granted Breggins' and Ruby's Motions to Dismiss the Amended Complaint pursuant to Rule 12(b)(2) on December 11, 2023, which mooted the need for the Court to hear the substantive 12(b)(6) issues on the efficacy of the allegations contained in Malone's Amended Complaint.

Interestingly enough, Malone (with the same legal counsel) had filed a similar complaint against the Washington Post, alleging the exact same three legal causes of action approximately two and a half months before the filing of his Complaints against the defendants. And prior to the hearing on the instant matter, on September 29, 2023 (over two months before the arguments on defendants' motions in this matter), this Court dismissed that Complaint upon the Washington Post's 12(b)(6) motion, which asserted nearly identical arguments that were subsequently put forth by both the Breggins and Dr. Ruby. In the Court's ruling, while it declined to award attorney's fees to the newspaper, it noted that "[n]onetheless, the Court notes that the Plaintiff has filed repeated defamation cases, and is represented by a lawyer who has sued Defendant three times in the past three years. *And if Plaintiff continues to bring defamation actions like those that have been dismissed, there will come a time when his lawsuits might fairly be deemed frivolous and awarding attorney's fees is appropriate*." (Case No. 3:22-cv-00046-NKM-JCH Order, dated 9/29/23) (Emphasis Added). That time, the Breggins urge, is now.



SLG THE STANLEY LAW GROUP

## ARGUMENT

Malone was warned by this Court, nearly three months prior to the hearing on the Breggins and Ruby motions, that there would come a time when his lawsuits would be "deemed frivolous," and that attorney's fees would be warranted. While this matter was dismissed on 12(b)(2) grounds, it nevertheless had near identical claims that were asserted by Malone in his case against the Washington Post. And, although the Breggin matter was dismissed on personal jurisdiction grounds, it is fair to assume that the matter would have been dismissed by the Court for the failure to state a cognizable claim under Breggins' 12(b)(6) motion if it had not considered the grounds put forth in their 12(b)(2) motion first. And yet with the knowledge that his Amended Complaint against the Breggins and Dr. Ruby would suffer the identical fate as his effort against the Washington Post, Malone nonetheless chose to pursue his frivolous case against the defendants. Consequently, the inquiry here is whether the awarding of attorney's fees is both just and warranted under the circumstances, based on the frivolous and vexatious nature of the lawsuit, the Plaintiff's bad faith in continuing the lawsuit after being put on notice by this Court before the hearing on this matter that he had no claim against either the Breggins or Dr. Ruby, and because the defendants collectively would have been entitled to fees under the merits of their Rule 12(b)(6) motions, had they been considered.

1. **Awarding attorney's fees is permitted in this case.**

a. **The law of Awarding attorney's fees in Virginia.**

When a Court is asked by the prevailing party to award attorney's fees in Virginia Circuit Courts, a certain analysis must occur first. "The general rule in this Commonwealth is that in the absence of a statute or contract to the contrary, a court may not award



THE STANLEY LAW GROUP SLG

attorney's fees to the prevailing party." *Prospect Development Co. v. Bershader*, 258 Va. 75, 92, 515 S.E.2d 291, 300 (1999); *Gilmore v. Basic Industries, Inc.*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987). The American Rule forbids an award of attorney's fees absent a contractual, statutory, or equitable basis for it:

"We have repeatedly stated that the 'general rule in this Commonwealth is that in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Arthur, et al. v. Warner*, (Va. Cir. 2000), citing *Russell Co. Dept. of Social Services, v. O'Quinn, 259 Va. 139, 142, 523 S.E.2d 492, 493 (2000)*, (quoting *Prospect Development Co. v. Bershader, 258 Va. 75, 92, 515 S.E.2d 291, 300 (1999)); see also* *Gilmore v. Basic Industries, Inc. 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987).*

Statutory exceptions to the American Rule in Virginia's state courts exist in numerous instances in the Virginia Code.[1] In particular, certain exceptions found in the Virginia law may apply to the instant matter. First, there exists a "bad faith exception" – this exception to the American Rule recognizes that attorney's fees can in fact be awarded,

[1] Such instances include: Prevailing party prosecuting a cause of action for malicious prosecution or false imprisonment may recover attorney's fees -- *Burrus v. Hines*, 94 Va. 413, 420, 26 S.E. 875, 878 (1897); *Bolton v. Vellines*, 94 Va. 393, 404, 26 S.E. 847, 850 (1897); Where a breach of contract has forced plaintiff to maintain or defend a suit with a third person, he may recover counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred -- *Owen v. Shelton*, 221 Va. 1051, 1055-56, 277 S.E.2d 189, 192 (1981); A Trustee defending a Trust in good faith may recover attorney's fees from the estate. *Cooper v. Brodie*, 253 Va. 38, 44, 480 S.E.2d 101, 104 (1997); Common Fund Exception -- where plaintiff brings a lawsuit that creates a fund which inures to the common benefit of others. *Norris v. Barbour*, 188 Va. 723, 741-42, 51 S.E.2d 334, 342 (1949); Attorney's fees have been upheld in certain cases involving alimony and support disputes even though such awards of attorney's fees were neither authorized by statute nor by contract. See *Carswell v. Masterson*, 224 Va. 329, 331-32, 295 S.E.2d 899, 900-01 (1982); and, in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party. *Prospect Development Co. v. Bershader*, 258 Va. 75, 92, 515 S.E.2d 291, 300 (1999).

The Stanley Law Group SLG

based upon the bad faith or vexatious, willful or wanton behavior by the party against whom the fees are sought, and in order to do justice between the parties. *Kemp v. Miller*, 166 Va. 661, 680, 186 S.E. 99, 106 (1936). Additionally, Virginia's Anti-SLAPP legislation (Va. Code §8.01-223.2(C)) provides that "[a]ny person who has a suit against him dismissed or a witness subpoena or subpoena duces tecum quashed, or otherwise prevails in a legal action, pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." And, Virginia Code §8.01-271.1 provides that where a lawyer signs and files a pleading, or makes an oral motion, such carries with it a certification by the lawyer that: "(i) he has read the pleading, motion, or other paper; (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." In subsection (D) of that code section, it provides that: "[i]f a pleading, motion, or other paper is signed or made in violation of this section, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including reasonable attorney fees." Virginia courts apply an "objective standard of reasonableness in determining whether a litigant and his attorney, after reasonable inquiry, could have formed a reasonable belief that the pleading was well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for an improper purpose." *Flippo v. CSC*



THE STANLEY LAW GROUP
SLG

*Assocs. III, L.L.C.*, 262 Va. 48, 65-66 (2001); see, *Flora v. Shulmister*, 262 Va. 215, 220 (2001). This standard does not require the court determine whether a litigant and his or her attorney's pleading was "actually warranted by existing law" or "well grounded in fact." *Northern Virginia Real Estate* v. *Martins*, 283 Va. 86,107 ("trial court correctly applied an objective standard of reasonableness in concluding that the facts … could not support a reasonable belief that the plaintiffs' claims … were well grounded in fact or law, as required by Code § 8.01-271.1."); *Flora v. Shulmister*, 262 Va. 215, 220 (citing *Gilmore v. Finn*, 259 Va. 448, 467 (2000)). This is so because "'[t]he wisdom of hindsight should be avoided' in applying the appropriate objectively reasonable standard of review." *Gilmore*, 259 Va. at 467 (quotation omitted). In essence, for a Court to make a finding that sanctions (in some form) should be levied, the judge must find claims and evidence to have been so one-sided that someone on the losing end could not have been operating in good faith. It then becomes a question of who – lawyer, client, or both is found to have violated § 8.01-271.1 and subject to sanctions.

Ultimately, and as demonstrated above, the American Rule in Virginia is not a blanket prohibition against the award of attorneys' fees absent a contractual or statutory provision, it is rather a general rule or guide which must be construed consistently with the court's equitable powers and the rule of complete relief. Courts of equity have the power to devise an unlimited variety of remedies to fit the circumstances of every case and the complex relations of the parties:

> "In the administration of remedies, 'an equity court is not bound by the strict rules of the common law, but rather adapts its relief and molds its decrees to satisfy the requirements of the case. Its purpose is the accomplishment of justice, and it will administer such relief as the exigencies of the case demand. The absence of precedents, or novelty in incident, presents no obstacle to the exercise of its jurisdiction.'" 19 Am. Jur., Equity, § 123, p. 123; 30 C.J.S., Equity, § 12, p. 331; *Alexander v. Hillman,* 296 U.S. 222, 56 S.Ct. 204, 80 L.ed. 192; *Chapman v. Sheridan-Wyoming Coal Co*., 338 U.S. 621, 70



THE STANLEY LAW GROUP
SLG

S.Ct. 392, 94 L.ed. 393; *Baker Sand & Gravel Co. v. Rogers P. & H. Co.*, 228 Ala. 612, 154 So. 591, 102 A.L.R. 346. "Equitable remedies . . . are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." *Turner v. Citizens Bank*, 111 Va. 184, 192, 68 S.E. 407, 409."

*First Nat. Exchange Bank of Roanoke v. Hughson*, 194 Va. 736, 753-54, 74 S.E.2d 797, 809 (1953) (Buchanan, J., and Hudgins, C.J., concurring).

b. **The law of attorney's fees awards in Federal Court.**

Generally, the "American Rule" also governs the awarding of attorney's fees in federal courts. Like Virginia, federal courts generally adhere to the rule that each party should bear the cost of its litigation and, ordinarily, the prevailing litigant is not entitled to collect reasonable attorney's fees from the loser. Congressional authorization by statute creates exceptions to the American Rule and permit a court to require one party to pay attorney's fees to the other. A court's authority to enforce its own orders by assessing attorney's fees for the willful violation of a court order, and a court's empowerment to award fees against a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, are other exceptions to the American Rule in federal courts. *Cherry v. Arendall,* 247 B.R. 176 (Bankruptcy E.D.Va. 2000). And while the traditional American rule ordinarily disfavors the allowance of attorney's fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorney's fees when the interests of justice so require. Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," and federal courts do not hesitate to exercise this inherent equitable power



THE STANLEY LAW GROUP
SLG

whenever "overriding considerations indicate the need for such recovery." *Hall v. Cole*, 412 U.S. 1, 4-5 (1973).

Instead of limiting the equity court's power to create exceptions, the United States Supreme Court in *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939) stated that "[a]s in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility.... In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice." And as the Fourth Circuit so succinctly stated: "[t]he variety of factual circumstances in which this principle [of judicial exception] has been applied indicates that 'dominating reasons of justice' has been the guide to its application." *Local No. 149 International Union, United Automobile, Aircraft and Agricultural Implement Manufacturers of America v. American Brake Shoe Co.*, 298 F.2d 212, 214 (4th Cir. 1962), cert. denied, 369 U.S. 873 (1962).

Attorney's fees can also be awarded as well under Rules 11 and 54 of the Federal Rules of Civil Procedure.[2] Rule 11 is similar in form and purpose as Virginia Code §8.01-271.1, and provides in subsection (C)(1), that: "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Rule 54 of the Federal Rules of Civil Procedure provides for the awarding of

[2] These code sections usually deal with the awarding of attorney's fees as sanctions against the attorney who filed the frivolous pleadings, apart from fees awarded by obtaining "Judgment" under FRCP 54.



The Stanley Law Group
SLG

costs and attorney's fees to the prevailing party when judgment is entered in favor of one party against the other.

The party claiming legal fees must plead a claim for the award of fees.[3] *Graham v. Community Management Corp.*, Record No. 161066 (Oct. 12, 2017). A party seeking an award of fees then has the burden of proving a *prima facie* case that the fees were reasonable and necessary. A party may not recover fees for duplicative work or for work that was performed on unsuccessful claims. In determining whether the *prima facie* case is established, the factfinder may consider some or all of the seven factors identified in *Chawla v. BurgerBusters, Inc.*, 255 Va. 616 (1998):

"[i]n determining whether a party has established a *prima facie* case of reasonableness, a fact finder may consider, *inter alia,* (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate."

2. **Awarding attorney's fees is warranted in this case.**

Here, the awarding of attorney's fees is warranted under the circumstances for three reasons: first, that the awarding of attorney fees and costs is proper under Virginia's "bad faith" exception, and that sanctions in the form of attorney's fees and costs are warranted against the Plaintiff under Virginia Code §8.01-271.1 and/or Rule 11 of the Federal Rules of Civil Procedure; and second, that under Virginia's anti-Slapp law, all of the Defendants

[3] The Breggins requested attorney's fees in their responsive pleadings.



THE STANLEY LAW GROUP
SLG

should be considered to be "prevailing parties" and therefore are entitled to an award of attorney's fees.

**i. The Plaintiff filed a vexatious lawsuit that he knew was not well-grounded in either law or fact.**

As this Court well knows, the Plaintiff filed this lawsuit against the Defendants on October 30, 2022, over two months after he had filed other similar lawsuits against other Defendants, including but not limited to the matter of *Dr. Peter Malone v. The Washington Post*, Case No. 3:22-cv-00046-NKM-JCH).[4] In each case, Malone alleged that he had been defamed by the various defendants, and alleged similar causes of action in each case.[5] By the time the ruling was handed down by this Court in the Washington Post case, Malone was on notice that his claims against by Dr. Ruby and the Breggins lacked factual merit, and were without sufficient legal grounds to be successful. At that point, Malone and his counsel's decision to continue to pursue his litigation against these defendants can only be seen as made both in bad faith and vexatious in nature – that is to say, that they continued to pursue the litigation purely to cause an annoyance to the defendants when they knew (or should have known) that they had no chance of success. Moreover, both Malone and his attorney's conduct was both willful and wanton, as it is apparent that they acted consciously with a reckless indifference to the consequences of moving their frivolous lawsuit forward.[6]

And, as demonstrated in the responsive pleadings filed by the Defendants to

[4] In fact, Malone's attorney at the time, Steven Biss, Esquire, had filed similar lawsuits against the newspaper at least three times prior to filing Malone's lawsuit.

[5] Defamation, Defamation by Implication, Fighting Words, etc.

[6] In fact, when Malone's first attorney, Mr. Biss, was compelled to be removed from the litigation due to his illness, new counsel, Mr. Mayo, had ample time to review the pleadings of the matter, had access to the Court's decision of the Washington Post case, and yet still proceeded with the matter, knowing that it had no chance of success on the merits.



THE STANLEY LAW GROUP
SLG

Malone's Amended complaint, Malone admitted that he filed the lawsuit against the defendants for an improper purpose. In a tweet dated March 27, 2023 on the social platform Twitter, Malone stated: "If I can win these lawsuits (and that's a big 'if'— defamation lawsuits are very hard to win) **then this will hopefully have a chilling effect on the corporate media and internet/social media defamation business model that so many pursue**—because it is profitable."(Emphasis Added). There can be no doubt of Malone's intentions here, and his very words clearly demonstrate that this Amended Complaint had been brought against the Breggins and the other Defendants for the improper purpose of harassing these defendants who were merely exercising their protected right to freedom of speech on matters of public concern and importance. It also is without question that Malone's two Complaints were not well grounded in fact and were not warranted by existing law, nor were they a good faith argument made for the extension, modification, or reversal of existing law. As such, one can only conclude that Malone and his counsel filed the original Complaint and the Amended Complaint in bad faith and for an improper purpose, in violation of Virginia Code §8.01-271.1(B); and, therefore, the Breggins should be awarded the attorney's fees and costs that they have expended in defending themselves from these repetitive frivolous lawsuits, in accordance with subsection D of this statute, as well as under the requirements of Rule 11 of the Federal Rules of Civil Procedure.

**ii. The Defendants are entitled to the awarding of attorney's fees under Virginia Code §8.01-223.2.**

Virginia's Anti-Slapp Statute provides absolute legal immunity from being sued for exercising one's first amendment right of free speech and association on public platforms and social media, especially when it involves speech and opinions on matters of



THE STANLEY LAW GROUP
SLGM

public concern. Anti-SLAPP laws provide defendants a way to quickly dismiss meritless lawsuits filed against them for exercising free speech, freedom of association/assembly, and/or freedom of the press. Known nationwide as "SLAPPs" or "Strategic Lawsuits Against Public Participation," these laws aim to discourage the filing of SLAPP suits and prevent them from imposing significant litigation costs and chilling protected speech. Va. Code §8.01-223.2(C)) provides that "[a]ny person who has a suit against him dismissed or a witness subpoena or subpoena duces tecum quashed, or otherwise prevails in a legal action, pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Here, it is without question that both Dr. Ruby and the Breggins were sued by Dr. Malone for exercising their right to freely express their opinions in the public square regarding the efficacy of the COVID vaccine, and Dr. Malone's involvement in it. It is also clear that Dr. Malone filed his lawsuits against these Defendants in an attempt to chill free speech, as he clearly expressed in the tweet referenced above. As such, it is also clear that Dr. Malone's lawsuit was banned by Virginia Code §8.01-223.2 from its inception; and yet, knowing all of this, the Plaintiff and his counsel chose to file it and pursue it anyway. Consequently, the Breggins were compelled to file responsive pleadings that sought the dismissal of the original complaint on both personal jurisdiction grounds as well as for grounds for failure to state a proper cognizable cause of action. Rather than admit that the defendants were right, or even file replies in opposition to the defendants' motions, Plaintiff chose to file an Amended Complaint – one that kept the same three causes of action but expanded on the factual allegations in an attempt to further support Malone's claims. When the defendants again filed responsive pleadings seeking dismissal of the Complaint upon the same grounds as they had before, rather than dismiss the lawsuit (knowing that the Breggins and Dr. Ruby were right on both the jurisdictional and 12(b)(6)



THE STANLEY LAW GROUP
SLGIII

grounds), Malone replied, and submitted the matter to the court for determination.

And while the Court was free to consider first whether the Court had personal jurisdiction over the defendants at the motions hearing, it nevertheless was without question that Malone's lawsuit was barred by Virginia's anti-SLAPP laws, and that the Defendants were cloaked in immunity by it. Had the Court considered the defendants' 12(b)(6) motion first, there would be no question that the defendants had prevailed pursuant to the immunity granted by the statute. However, just because this Court took up the defendants' 12(b)(2) motion first, and by granting it did not need to consider the arguments contained in their 12(b)(6) motion and memoranda, does not mean that the Breggins are foreclosed from claiming immunity under the anti-SLAPP law and prevailing party status. The factual allegations and claims contained in Malone's case against the Washington Post are nearly identical to those contained in his Complaint against the defendants; and, this Court's analysis of those claims against the Washington Post are nearly identical to what it would have been had the Court considered the Breggins' 12(b)(6) motion. Regardless of which motion by the Defendants that the Court considered first, the Plaintiff's Amended Complaint in the instant matter would have suffered the same fate as his Complaint against the Washington Post fared, and therefore, they are both eligible and deserving an award of attorney's fees as a result.

3. **The amount of attorney's fees is reasonable in this case.**

As stated previously, a party seeking an award of fees then has the burden of proving a *prima facie* case that the fees were reasonable and necessary. In determining whether the *prima facie* case is established, the factfinder may consider some or all of the seven factors identified in *Chawla v. BurgerBusters, Inc.*, 255 Va. 616 (1998):



THE STANLEY LAW GROUP
SLG

"[i]n determining whether a party has established a *prima facie* case of reasonableness, a fact finder may consider, *inter alia,* (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate."

Counsel for the Breggins has attached the following billing (Exhibit A) which demonstrates all of the work done for these defendants since the firm was retained to handle the matter. As can be seen, the Breggins have incurred $56,238.00 to date in legal fees.[7] As the bill reflects, the law firm utilized one attorney and one legal assistant. It conducted interviews with the clients, research of the issues and applicable case law and the drafting of the necessary motions (Rule 12(b)(2) and (6)) with accompanying memoranda that were required to be filed with the Court to defend not only the original Complaint, but also the Amended Complaint as well. Counsel reviewed all of the pleadings filed in the case, and prepared for and appeared at the hearing that was held on the defendants' motions to dismiss. Additionally, counsel for the Breggins has had to research and draft the instant brief as well. The total hours expended up to the date of the filing of this Motion and brief is 26.7 attorney hours, and 3.5 hours expended by the legal assistant. By contract, the Breggins agreed to pay an attorney fee rate of $500.00 per hour, and $90.00 per hour for the services of the legal assistant. Additionally, matters of constitutional concern are necessarily complex because constitutional interpretation and

[7] The attorney on behalf of the Breggins did not incur any expenses charged to the client during the legal representation.



THE STANLEY LAW GROUP
SLG

application were made necessary by the very nature of the Constitution. It was wisely crafted in rather general terms, leaving it open to future elaboration by the Courts to meet changing conditions. As Chief Justice Marshall noted in *McCulloch v. Maryland*, 17 U.S. 316 (1819) a constitution that attempted to detail every aspect of its own application "would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind. . . . Its nature, therefore, requires that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects be deduced from the nature of the objects themselves." While the litigation did not go to trial and was dismissed during the pleadings stage, it dealt with First Amendment issues regarding the ever evolving platforms of social media found on the internet which necessarily required significant time and effort to defend it, multiple times with multiple pleadings, due to the Plaintiff filing a Complaint and then an Amended Complaint during the initial process of the litigation. Moreover, the services rendered were entirely necessary and required under the circumstances. Clearly, the efforts of the Breggins' counsel resulted in a successful defense against Malone's various legal claims and protected the Breggins from the potential of a judgment in excess of twenty-five million dollars, had Malone's legal effort had been successful. And, the amount charged to the Breggins' by counsel was both necessary and reasonable, and in line with what attorney fees are usually charged to clients in similar actions.[8]

For the foregoing reasons, and for those reasons expressed before the Court, *ore tenus*, your Defendants Dr. Peter and Ginger Breggin pray that this Court grant their

[8] Counsel for Breggins had its bill for services and court filings peer reviewed by outside counsel and it was found to be both reasonable and appropriate under the circumstances presented. The affidavit of Michael Joynes, Esquire, is attached hereto as Exhibit B, and is incorporated herein by reference.



THE STANLEY LAW GROUP
SLG

Motion for Attorney's Fees and costs against Dr. Malone, his counsel (if the Court deems warranted), and that it grant the Breggins any other relief that this Court deems appropriate under the circumstances.

Respectfully Submitted,

PETER R. BREGGIN, MD.
GINGER ROSS BREGGIN
By Counsel

By /s/ William M. Stanley
William M. Stanley, Esq. - VSB# 37209
THE STANLEY LAW GROUP, PLLC
13508 Booker T. Washington Hwy.
Moneta, Va. 24121
p. 540-721-6028
f. 540-721-6405
bstanley@vastanleylawgroup.com

**CERTIFICATE**

I hereby certify that on the 25th day of January, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

R. Braxton Hill, IV (VSB No. 41539)
Craig Thomas Merritt (VSB No. 20281)
919 E. Main Street, Suite 1000
Richmond, VA 23219
Telephone: 804.916.1600
E-mail: bhill@merrittfirm.com
E-mail: cmerritt@merrittfirm.com
BITMAN O'BRIEN & MORAT, PLLC

Ronnie Bitman (admitted *pro hac vice*)
615 Crescent Executive Ct., Suite 212
Lake Mary, Florida 32746
Telephone: 407.815.3110
E-mail: rbitman@bitman-law.com
*Attorneys for Defendant Dr. Jane Ruby*

By /s/ William M. Stanley



THE STANLEY LAW GROUP
SLG