UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| DR. ROBERT W. MALONE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:22-cv-63 |
| | ) |
| PETER R. BREGGIN, MD, | ) |
| GINGER ROSS BREGGIN, and | ) |
| DR. JANE RUBY | ) |
| | ) |
| Defendants. | ) |

**DR. JANE RUBY'S MEMORANDUM IN SUPPORT OF
HER ENTITLEMENT TO AN AWARD OF ATTORNEYS' FEES AND COSTS**

Defendant, Dr. Jane Ruby ("Dr. Ruby"), submits this memorandum in accordance with the Court's December 11, 2023, instruction to the parties to address the issue of Defendants' entitlement to an award of attorneys' fees and costs, and in response to Plaintiff's Brief in Opposition to Defendant's Request for Fees and Costs [DE 66].[1]

I.  **INTRODUCTION**

Plaintiff, Dr. Robert W. Malone, filed this civil action against Dr. Ruby, a Florida resident, for purported defamation and insulting words. [DE 1; 37]. Despite the global subject matter of the online publications at issue, Dr. Malone chose to file this action in Virginia, where Dr. Ruby has no relevant contacts, and purported to seek $25 million in damages. [*Id.*]. The Court granted Dr.

---

[1] This submission is in response to the Court's December 11, 2023, instructions, and only addresses the legal principles supporting an award of fees and costs  It is not a fee submission, which Dr. Ruby is prepared to make on a timely basis after entry of judgment, with supporting materials as required by Rule 54 of the Federal Rules of Civil Procedure and the governing Local Rule.

Ruby's Motion to Dismiss after considering the substance and focus of the online statements, which addressed a global public health matter (COVID-19). [*See, e.g.,* DE 48].

Dr. Ruby is entitled to an award of attorney's fees under Virginia's Anti-SLAPP statute, and as a matter of the Court's inherent power and discretion. Dr. Malone's complaint and amended complaint were aimed to intimidate, and his litigation practice was vexatious and baseless from the start. His admitted goal was to chill free speech. Referring to this case, Dr. Malone publicly stated:



[DE 48-1, ¶ 3; 48-2, p. 3].

Notably, Dr. Ruby, by her attorney, put Dr. Malone's current counsel on notice regarding the baseless nature of the lawsuit.[2] This Court, in a separate case, had warned Plaintiff that the time would come for an award of attorney fees if these types of lawsuits continued. *See generally*, *Malone v. WP Co., LLC*, No. 3:22-CV-00046, 2023 WL 6447311 (W.D. Va. Sept. 29, 2023). Nevertheless, Dr. Malone and his counsel refused to relent. Dr. Ruby was forced to file not one, but two motions to dismiss because Dr. Malone chose to amend his complaint after receiving notice of Dr. Ruby's Anti-SLAPP defense. Both times, Dr. Ruby moved to dismiss the lawsuit as baseless due to the nature of the online publications at issue. [DE 33, p. 35; DE 48, p. 41; DE 56, P. 2]. For example, she argued on the point of lack of personal jurisdiction, "the quality and nature of Dr.

---

[2] *See* Declaration of Ronnie Bitman, at ¶ 1, Exh. 1.

Ruby's electronic activity pertains to COVID-19, health freedom, and vaccines—a global issue." [DE 56, p. 2]. As a basis for Anti-SLAPP immunity, she argued that the subject matter of the lawsuit is a hot button issue that is part of a global discourse (and prohibited by Virginia's Anti-SLAPP law). [DE 48, p. 43].

This Court granted Dr. Ruby's motion to dismiss for lack of personal jurisdiction after hearing oral argument on December 11, 2023. At that time, the Court orally ordered that the parties may brief their respective positions regarding the Defendants' entitlement to attorney's fees. [DE 65].

Dr. Malone contends that the Court may not award fees because (i) the dismissal was not pursuant to Anti-SLAPP immunity, (ii) Dr. Malone believes the amended complaint is indicative of a good-faith basis for personal jurisdiction; and (iii) Dr. Malone had an unexpected change of counsel prior to the motion to dismiss hearing. [DE 66]. Dr. Malone falls short on each point. The issues of personal jurisdiction and Anti-SLAPP immunity are inextricably intertwined in this case. And even outside of Virginia's Anti-SLAPP statute, the Court has the authority to sanction Plaintiff, and award attorneys' fees and expenses, for proceeding with this baseless lawsuit.

II. ARGUMENT

A. Anti-SLAPP, Jurisdiction, and Attorney Fees

The Court should award Dr. Ruby her attorneys' fees pursuant to Virgnia's Anti-SLAPP statute. Dr. Ruby's 12(b)(2) motion to dismiss for lack of personal jurisdiction is closely connected with the criteria for granting Anti-SLAPP immunity. In moving to dismiss, Dr. Ruby focused on the globally significant subject matter of the publications at issue. [*See, e.g.*, DE 48, pp. 14, 43]. Because her defense of lack of personal jurisdiction is inextricably intertwined with her Anti-

3

SLAPP motion, attorney fees are appropriate and necessary under Virginia Code § 8.01-223.2(C).[3] *Cf., Metabolife Intern., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002) (concluding that the defendant's "defenses (lack of personal jurisdiction, improper venue, and the anti-SLAPP motion) were all part of his motion to dismiss, rather than wholly separate defenses.") (parenthesis in original).

The analysis properly begins with the language and purpose of Virginia's Anti-SLAPP statute, which provides immunity to those exercising their right to speak on matters of public concern in circumstances like those presented here:

> A. A person shall be immune from tort liability if the tort claim is based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party . . . .

Va. Code § 8.01-223.2(A) (2023). "Generally, the purpose of the anti-SLAPP statute is to deter harassing lawsuits aimed at individuals exercising their First Amendment right to freedom of speech, particularly on matters of public concern." *Hutchens v. McDougal*, No. 121CV982RDATCB, 2022 WL 2440347, at *2 (E.D. Va. July 5, 2022). For an award of fees under the Anti-SLAPP law, Virginia courts have held that a party must prevail, or have the suit against him dismissed, pursuant to the immunity provided by the statute. *Id*.[4]

Here, the Court's dismissal should be viewed as pursuant to, and part of, Anti-SLAPP immunity. Dr. Malone filed a harassing lawsuit against Dr. Ruby for exercising her First

---

[3] Virginia Code §8.01-223.2(C) provides, "[a]ny person who has a suit against him dismissed or a witness subpoena or subpoena duces tecum quashed, or otherwise prevails in a legal action, pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs."

[4] In *Hutchens*, attorney's fees were not appropriate where the Plaintiff voluntarily dismissed the lawsuit. 2022 WL 2440347, at *2. That is not the case here.

Amendment right to freedom of speech over the internet on a matter of public concern. When reviewing Dr. Ruby's memorandum in support of her motions to dismiss the original and amended complaints, it becomes clear that Dr. Ruby and her attorneys asserted a personal jurisdiction defense that required the Court to consider core factors that also inform the entitlement of a defendant to Anti-SLAPP immunity. [*See, e.g.*, DE 48, pp. 14, 43]. As part of her motion under 12(b)(2), Ruby argued that the quality and nature of her electronic activity pertains to COVID-19 and vaccines—a global issue. [DE 48, p. 14].

In pointing out a Virginia Court's inability to exercise personal jurisdiction over her in this defamation case, Dr. Ruby asked the Court to consider that the nature of the online publications at issue consist of public discussions on the health freedom movement, the welfare of the general public, thoughts on COVID-19, the concept of mass formation psychosis, and what may have happened in a Wuhan lab. [DE 48, p. 14, first full paragraph]. Dr. Ruby's SLAPP argument is the same. She asserted, "it is beyond question that the statements relate to a 'matter of public concern.'" [*Id.* at p. 42]. She further argued that "Dr. Malone seeks to silence Dr. Ruby by filing burdensome, costly, and meritless litigation **over a foreign defendant**, requiring her needlessly to expend significant resources to protect her freedom of speech." [*Id.* at p. 43] (emphasis added).

In granting dismissal, the Court necessarily determined that the publications at issue involve a global matter. These facts distinguish this case from *Hutchens et al.*, and lead to the conclusion that the Court's dismissal on jurisdictional grounds has a direct nexus with Dr. Ruby's entitlement to the immunity provided by Virginia's Anti-SLAPP law.[5] The critical factor for the Court's consideration was the nature and focus of the online statements. Indeed, the Court was

---

[5] Aside from *Hutchens*, Dr. Malone's reliance upon *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 215 (4th Cir. 2019) is also an odd choice. *Hawkins* does not include any discussion of online statements regarding matters of public interest or Anti-SLAPP.

required to examine the content of the statements at issue in considering the personal jurisdiction argument presented in Dr. Ruby's motion to dismiss. Dr. Malone is simply wrong to suggest that the Court did not conduct any inquiry relevant to Virginia Code § 8.01-223.2.

Dr. Malone cannot avoid the fact that his entire lawsuit arises from free speech over the internet on matters of public concern. The fundamental attack on protected free expression is only made worse by the Plaintiff's choice to file the lawsuit in Virginia, placing an undue burden on out of state defendants. *Metabolife*, 213 F. Supp. 2d at 1223 ("the entire lawsuit is subject to the anti-SLAPP motion because all causes of action against Blackburn relate to free speech and all of the activity by Blackburn's attorneys occurred in the context of, and were inextricably intertwined with, the anti-SLAPP motion. All of Blackburn's attorney fees and expenses were incurred 'in connection with' the anti-SLAPP motion."). Here, the Court should find that Dr. Ruby is entitled to an award of attorneys' fees because "a defendant who moves to dismiss a SLAPP lawsuit for lack of personal jurisdiction is still faced with the 'undue burden of defending against the nonmeritorious claim,' including associated fees and costs." *Wigington v. MacMartin*, No. 221CV02355KJMDMC, 2022 WL 3999887, at *4 (E.D. Cal. Sept. 1, 2022). This defamation action is the very type of lawsuit that the Anti-SLAPP statute aims to prevent.

Despite Plaintiff's effort to avoid dismissal by arguing Virginia is the focal point of the Breggins' and Dr. Ruby's publications [DE 49, p. 7], the Court declined to allow the lawsuit to proceed based in part on the nature of the statements. The Court's analysis on whether the online statements are part of global public discourse leads to the conclusion that Dr. Ruby's personal jurisdiction defense is intertwined with Anti-SLAPP immunity. In short, the Court's award of

attorneys' fees to Dr. Ruby is permissible under Virginia's Anti-SLAPP law given the nature of the lawsuit, the arguments raised, and the necessary analysis that led to dismissal.[6]

After determining that fees are permissible, the Court should next conclude that an award of attorneys' fees to Dr. Ruby is appropriate and necessary under the circumstances of this case. When determining whether to award Anti-SLAPP fees, courts generally consider "whether (1) the allegations were groundless, frivolous, or unreasonable; (2) the Complaint presented a cogent legal theory; (3) the action was demonstrably filed with an improper motive; and (4) if there was an imbalance of resources between the two parties." *Fairfax v. New York Pub. Radio*, No. CR122CV895AJTIDD, 2023 WL 3303125, at *6 (E.D. Va. Apr. 4, 2023). When these factors are considered, Dr. Malone cannot escape attorneys' fee liability.

Without basis, Dr. Malone haled Dr. Ruby into a foreign court and threatened her with $25 million in damages for merely making online statements, or reposting others' statements, that are indisputably part of global public discourse on a hot button issue. The complaint does not allege a cogent legal theory. Instead, it seeks to punish a Florida resident in Virginia for participating in global discourse about COVID-19. Notably, this was not the first time that Dr. Malone pursued a defamation case of this sort. *See Malone v. WP*, No. 3:22-CV-00046, 2023 WL 6447311. In *Malone v. WP*, like here, Dr. Malone was represented by Steven Scott Biss. Like here, the subject matter involved a public debate on COVID-19. In concluding that the "Defendant is protected by anti-SLAPP immunity," this Court expressly noted, "Plaintiff has filed repeated defamation cases and is represented by a lawyer who has sued Defendant three times in the past three years. And if

---

[6] Even after dismissal for lack of personal jurisdiction, courts may and should evaluate collateral issues relevant to the award of attorney fees. *C.f.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending.").

7

Plaintiff continues to bring defamation actions like those that have been dismissed, there will come a time when his lawsuits might fairly be deemed frivolous and awarding attorney fees is appropriate." *Id.* at *9.[7] Despite this admonition, Plaintiff pushed this case forward.

Dr. Malone's candid online statement that he wanted to chill speech by filing this action, and the demand for $25 million dollars in his complaint,[8] demonstrate his improper motive. He again sought to intimidate and silence an opponent by filing a lawsuit in a forum that is foreign to the defendant. Finally, the imbalance of resources between the litigants justifies compensating Dr. Ruby for the fees she incurred. Dr. Ruby represented to the Court that it would be a tremendous burden for her to litigate in Virginia. [DE 48-13, p. 3]. Dr. Malone is a resident of Virginia and a world-renowned physician with a history of suing Twitter and the Washington Post; Dr. Ruby is an out of state resident who had to fundraise to mount a legal defense.

And again, Dr. Malone brazenly pursued Dr. Ruby in Virginia despite fair warning that Anti-SLAPP fees might be forthcoming. Incredibly, Dr. Malone was not only warned by the Court in *Washington Post*, but he was given notice in this lawsuit. Dr. Ruby's counsel, Ronnie Bitman, emailed Dr. Malone's new counsel, Evan Mayo, on October 24, 2023, to introduce himself, to advise counsel of the *Washington Post* opinion, and to discuss the potential for dismissal. [*See* Declaration of Ronnie Bitman, filed herewith]. Nevertheless, Dr. Malone and his counsel moved forward. Plaintiff is not prejudiced by the change in counsel. Plaintiff chose to proceed despite Dr. Malone's and Mr. Biss's documented litigation history.

An award of fees will serve the purpose of the law by deterring harassing lawsuits like this one. When considering the *Washington Post* case, and Plaintiff's litigation history, the instant

---

[7] *See also Malone v. Twitter, Inc.*, 2022 WL 14835110 (Cal. Super. Sept. 28, 2022).
[8] It is not necessary to plead the actual amount of damages within the complaint.

lawsuit reflects a pattern and practice of filing vexatious lawsuits and demonstrates a stubborn refusal to heed a direct warning from the Court. The time has come for the Court to award attorneys' fees pursuant to Virgnia's Anti-SLAPP law.

### B. Bad Faith Litigation and Sanctions

Should the Court elect not to award attorneys' fees pursuant to Virgnia's Anti-SLAPP law, it should still exercise its discretion and award attorneys' fees to Dr. Ruby because of the baseless, vexatious nature of the lawsuit. Dr. Ruby adopts the position of the Breggins that "while the traditional American rule ordinarily disfavors the allowance of attorney's fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorney's fees when the interests of justice so require." The power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such recovery." *Hall v. Cole*, 412 U.S. 1, 4-5 (1973).

Plaintiff's decision to continue this lawsuit after the Court's admonition in *Washington Post* demonstrates its bad faith, vexatious nature. Plaintiff, through counsel, continued this lawsuit for the sheer purpose of engaging Dr. Ruby and the Breggins in cumbersome litigation, with almost certain knowledge that Plaintiff had no chance at success. *Malone v. WP*, No. 3:22-CV-00046, 2023 WL 6447311. Malone's conduct was willful and wanton, as it is apparent that he acted consciously with a reckless indifference to the consequences of moving his frivolous lawsuit forward. [Declaration of Ronnie Bitman, Exh. 1].

Equally important, Dr. Malone's tweet says it all. In a tweet dated March 27, 2023 on the social media platform Twitter, Malone stated: "If I can win these lawsuits (and that's a big 'if'—defamation lawsuits are very hard to win) **then this will hopefully have a chilling effect on the**

9

**corporate media and internet/social media defamation business model that so many pursue**—because it is profitable."(Emphasis Added). Dr. Malone plainly brought this lawsuit to harass his opponents and silence them. *See* Fed. R. Civ. P. 11(b)(1) (litigation for an improper purpose).[9]

The complaint and amended complaint are in violation of the Anti-SLAPP provisions of the Virginia Code, and they are sanctionable by the Court on its own under Rule 11 of the Federal Rules of Civil Procedure.

### III.    CONCLUSION

This Court should award Dr. Ruby attorneys' fees and costs under Virginia's Anti-SLAPP law and as a matter of its inherent authority and its Rule 11 powers. Dr. Malone (and his Counsel if it is deemed appropriate) should be liable for Dr. Ruby's fees and costs for the reasons discussed above and at oral argument.

**WHEREFORE**, the Defendant, Dr. Jane Ruby, respectfully requests that the Court enter an order entitling Dr. Ruby's to an award of attorneys' fees and costs.

Dated:  February 8, 2024

---

[9] To the same effect is Virginia Code §8.01-271.1, which provides that where a lawyer signs and files a pleading, or makes an oral motion, such carries with it a certification by the lawyer that: "(i) he has read the pleading, motion, or other paper; (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Both the Virginia statute and Fed. R. Civ. P. 11(c)(4) provide for an award of attorneys' fees and other expenses.

MERRITTHILL, PLLC

*/s/ R. Braxton Hill*
Craig T. Merritt (VSB 20281)
R. Braxton Hill, IV (VSB No. 41539)
919 E. Main Street, Suite 1000
Richmond, VA 23219
Telephone: 804.916.1600
E-Mail: cmerritt@merrittfirm.com
E-Mail: bhill@merrittfirm.com

Bitman O'Brien & Morat, PLLC

*/s/ Ronnie Bitman*
Ronnie Bitman, Esquire (admitted pro hac)
615 Crescent Executive Ct., Suite 212
Lake Mary, Florida 32746
Telephone: 407.815.3110
E-Mail: rbitman@bitman-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the non-registered participants.

Date: February 8, 2024

/s/ *R. Braxton Hill, IV*
R. Braxton Hill, IV (VSB No. 41539)
MERRITTHILL, PLLC
919 E. Main Street, Suite 1000
Richmond, VA 23219
Telephone: 804.916.1600
E-mail: bhill@merrittfirm.com

*Attorney for Defendant Dr. Jane Ruby*