# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DR. ROBERT W. MALONE,<br><br>         *Plaintiff,*<br><br>v.<br><br>PETER R. BREGGIN, MD., *et al.*,<br><br>         *Defendants.* | Case No. 3:22-cv-00063<br><br>MEMORANDUM OPINION<br><br>Judge Norman K. Moon |

  This matter is before the Court upon the motions to dismiss for lack of personal jurisdiction, filed by Defendants Dr. Peter Breggin and Ginger Ross Breggin, and by Dr. Jane Ruby. Dkts. 44, 46. Because the Court concludes that dismissal is appropriate for lack of personal jurisdiction, the motions will be granted.

### Background

  Plaintiff Dr. Robert W. Malone is a licensed doctor in Madison County, Virginia. Compl. ¶ 1. He alleges that "[h]e is a world-renowned scientist and expert in the field of mRNA technology." *Id.* And he argues he was "the leading contributor to the science exploited by Pfizer and other pharmaceutical corporations to create the alleged 'vaccines' for the novel coronavirus ('COVID-19')." *Id.* He has brought this defamation case against Defendants Peter R. Breggin, Md., his wife Ginger Breggin, who are citizens of New York, and against Defendant Dr. Jane Ruby, a citizen of Florida. *Id.* ¶¶ 4–5.

  At a high level, Plaintiff alleges that Defendants published false statements against him "in internet articles, podcast videos and via social media (Telegram and Twitter) that persistently targeted [him] and were transmitted to subscribers and viewers in Virginia." *Id.* ¶ 1. Plaintiff

claims Defendants falsely accused him of "fraud, disinformation, dishonesty, deception," etc., and that "[t]he gist of the defamatory statements and implications is that [he] lacks the character and is unfit to be a medical doctor and scientist." *Id.*

According to Plaintiff, the Breggins "own and operate a website, https://breggin.com/ on which they publish and advertise materials supportive of their view that America 'is being taken down by a pack of bloodthirsty predators – frenzied over feasting upon the carcass of our great nation.'" *Id.* ¶ 4. Plaintiff alleges that the website is active. *Id.*[1] Plaintiff claims that on their website, the Breggins (1) "litigate their position in this lawsuit," (2) "fundraise off this lawsuit by shamelessly soliciting donations from Virginians and others," (3) "sponsor and publish the views of third-parties about this lawsuit and about Dr. Malone," (4) "advertise Dr. Breggin's blogs and solicit subscriptions to his email 'alerts'", and (5) "market, solicit and sell dozens of Dr. Breggin's books to consumers in Virginia and elsewhere." *Id.*

On their website, the Breggins also produce and publish "subscription radio and internet shows," including "Refounding America TV," the "Breggin Hour," and "Brighteon.TV," which Plaintiff alleges they "use to broadcast false and defamatory statements to listeners and viewers in Virginia and elsewhere." *Id.* Plaintiff also alleges that they "operate multiple social media properties which they use to follow Dr. Malone, solicit book sales from Virginians and others, and republish the false and defamatory statements at issue in this action." *Id.* Finally, the Breggins "also operate 'America Out Loud,' a website dedicated to informing America 'of the evil politics and machinations of the Marxist Left.'" *Id.* Plaintiff alleges that "America Out Loud broadcast and published in Virginia the Breggins' false statements about Dr. Malone." *Id.*

---

[1] It remains active as of March 27, 2024.

Plaintiff alleges that Dr. Ruby "produces and broadcasts" an "internet show" called the "Dr. Jane Ruby Show" on the Stew Peters Network to over 436,000 subscribers in Virginia and elsewhere." *Id.* ¶ 5. Plaintiff further alleges that Dr. Ruby "operates multiple social media accounts, including a Telegram account … where she boasts 108,000 subscribers from Virginia and elsewhere, a Twitter account … with 42,300 followers in Virginia and elsewhere … and a Gab account … with over 17,400 followers." *Id.* According to Plaintiff, Dr. Ruby "uses her Internet show and social media accounts to publish false and defamatory statements into Virginia to subscribers and users who pay Ruby for her unlawful content." *Id.* Plaintiff contends that Dr. Ruby has "persistently used Twitter" to defame him, and to "communicate directly with (*i.e.*, tag) Dr. Malone and his subscribers and followers in Virginia." *Id.* & n. 1. Plaintiff also cites a video published in June 2023 "in the Charlottesville edition of *YourNews*," in which she "repeatedly insulted and maligned Dr. Malone, made false and defamatory statements about Dr. Malone's counsel," and solicited donations in her defense. *Id.* & n. 1.

Plaintiff Dr. Robert Malone has filed this federal lawsuit against Defendants Peter and Ginger Breggin and Dr. Jane Ruby, bringing two counts (defamation and defamation by implication). *See* Compl. The Breggins filed two motions to dismiss the lawsuit, the first a Rule 12(b)(2) motion challenging personal jurisdiction, and the second under Rule 12(b)(6) claiming Plaintiff did not state a plausible claim to relief. Dkts. 42, 44. Dr. Ruby similarly filed two motions to dismiss. Like the Breggins, her first challenged personal jurisdiction, the latter challenged the merits. Dkts. 46, 47. Plaintiff filed a unified opposition to the four motions to dismiss. Dkt. 49. Defendants filed reply briefs. Dkts. 54, 56.

The Court heard oral argument on the motions to dismiss, and permitted the filing of briefing on Defendants' requests for an award of attorney's fees. The parties have filed their

additional briefs on the subject of attorney's fees. Dkts. 68, 74–76. The matter is now fully briefed and ripe for disposition.

## Legal Standard

Rule 12(b)(2) provides that a defendant may file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). That is, the court must determine "whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction," and the court "may also consider affidavits submitted by both parties" in so doing, "although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226.

The federal rules provide that a district court must first look to state law to determine if personal jurisdiction exists over a defendant. Specifically, Rule 4(k)(1)(A) asks whether a defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). The exercise of personal jurisdiction is therefore lawful "if [1] such jurisdiction is authorized by the long-arm statute of the state in which it sits and [2] the application of the long-arm statute is consistent with the due-process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). "Virginia's long-arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). Therefore the

statutory and constitutional analyses merge into one inquiry, asking "whether the defendant has sufficient 'minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations marks and citation omitted).

The Fourth Circuit has adapted the traditional standard for establishing specific jurisdiction "so that it makes sense in the Internet context." *Young*, 315 F.3d at 263.[2] The court "concluded that a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consult., Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). The Fourth Circuit further clarified that, "[w]hen the Internet activity is … the posting of news articles on a website, the *ALS Scan* test works more smoothly when parts one and two of the test are considered together." *Young*, 315 F.3d at 263. Accordingly, a court should determine whether the defendant "manifested an intent to direct their website content … to a Virginia audience." *Id.* In other words, the party posting the content "must, through the Internet postings, manifest an intent to target and focus on Virginia readers." *Id.* By contrast, merely "placing information on the Internet" is not sufficient to subject a party to personal jurisdiction." *Id.*; *see also id*. (explaining that the mere "posting and accessibility" of the information in a State is not enough).

---

[2] There is no argument that Defendants are subject to general personal jurisdiction in Virginia. Plaintiff only argues that "Defendants are subject to specific personal jurisdiction in Virginia …." Compl. ¶ 8; Dkt. 49 at 2.

In *Young*, the Fourth Circuit concluded that a court in Virginia could not exercise specific personal jurisdiction over Connecticut newspapers that published online articles concerning conditions at a Virginia prison and allegedly defaming Young, a warden at the prison, while reporting on a "Connecticut prison transfer policy." *Young*, 315 F.3d at 263–64. The Fourth Circuit determined that the "content of the websites [was] decidedly local, and neither newspaper's website contain[ed] advertisements aimed at a Virginia audience," and further, that "Connecticut, not Virginia, was the focal point of the articles." *Id.*

Reasoning

Plaintiff contends that "[p]ersonal jurisdiction is warranted in Virginia because Virginia is the 'focal point' both of [Defendant] Breggins' and Ruby's publications and of the harm suffered." Dkt. 49 at 7. In Plaintiff's view, this is not mere "passive" electronic activity, but rather, Defendants "wrote the articles, spoke in the videos and podcasts, and published both on platforms they own and operate and on others' networks." *Id.* Plaintiff argues that Defendants "directed their extensive online activities into Virginia numerous times, including through one or more agents and instrumentalities in Virginia," giving rise to these claims for defamation against Plaintiff, "a Virginia medical doctor and scientist." *Id.* at 6. And Plaintiff asserts that Defendants are "actively litigat[ing] this case on the Internet, via podcasts published in Charlottesville, and via Breggins' active website, going so far as to publish confidential communications they have had with their Virginia attorneys." *Id.* at 8.

Plaintiff relies on the fact that he is a licensed doctor living in Virginia and a Virginia citizen, as well as allegations that he suffered reputational harm in Virginia, to support the Court's exercise of personal jurisdiction over Defendants. *See* Compl. ¶¶ 1, 3, 8; Dkt. 49 at 7 ("Personal jurisdiction is warranted in Virginia because Virginia is the 'focal point' … of the

harm suffered," and alleging that Defendants "knew or should have known that their inflammatory statements would reach Dr. Malone, causing substantial harm in Virginia"). The plaintiff in *Young v. New Haven Advocate* made a similar argument that the Supreme Court's decision in *Calder* [3] "requires a finding of jurisdiction in this case simply because the newspapers posted articles on their Internet websites that discussed the warden and his Virginia prison, and he would feel the effects of any libel in Virginia, where he lives and works." 315 F.3d at 262. The Fourth Circuit rejected the argument, stated that "*Calder* does not sweep that broadly, as we have recognized." *Id.* While "the place that the plaintiff feels the alleged injury is plainly relevant" to the jurisdictional analysis, "it must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state" in order for personal jurisdiction to attach. *Id.* (cleaned up).

The Breggins are citizens of New York, and Dr. Jane Ruby is a citizen of Florida. Compl. ¶¶ 4–5. There is no argument that Defendants have any home, office, business, or property in Virginia. *See* Dkt. 45 at 9 ("the Breggins have no home, office, business, or property in Virginia"); Dkt. 48 at 13 (attesting that Dr. Ruby "has no offices in Virginia, no bank accounts, property, assets, or other interests in Virginia").

Plaintiff therefore primarily relies on Defendants' internet-based statements and social media postings to support personal jurisdiction. *See* Dkt. 49 at 1. As to the Breggins Defendants these include: **(1)** their website, https://breggin.com, and their statements thereon, in which they allegedly "litigate their position in this lawsuit," fundraise "from Virginians and others," publish views about the lawsuit and Plaintiff, and market and sell "dozens" of Dr. Breggin's books to consumers "in Virginia and elsewhere," **(2)** "subscription radio and internet shows" such as

---

[3] *Calder v. Jones*, 465 U.S. 783 (1984).

"Refounding America TV," the "Breggin Hour," and "Brighteon.TV," **(3)** social media accounts, which the Breggins allegedly "use to follow Dr. Malone, solicit book sales from Virginians and others, and republish" the false statements at issue; and **(4)** the America Out Loud website and broadcast. Comp. ¶ 4; Dkt. 49 at 3. And as to Dr. Jane Ruby, these allegations include **(1)** her "internet show," the "Dr. Jane Ruby Show," which allegedly has "436,000 subscribers in Virginia and elsewhere," **(2)** her social media accounts, including Telegram, Twitter, and Gab with 108,000, 42,300, and 17,400 subscribers, respectively, and **(3)** a video published in June 2023 in the Charlottesville edition of *YourNews*. Compl. ¶ 5; Dkt. 49 at 4.

The mere fact that Defendants posted these allegedly defamatory articles online is not sufficient to subject them to personal jurisdiction. Indeed, it is settled that "a person's act of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed." *Young*, 315 F.3d at 263 (citing *ALS Scan*, 293 F.3d at 712) (cleaned up). As the Fourth Circuit explained, "the fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience." *Id.* In other words, "[s]omething other than posting and accessibility" is needed to show that Defendants here "purposefully (albeit electronically) directed their activity in a substantial way to the forum state, Virginia." *See id.* at 263 (cleaned up). The test, at bottom, asks whether Defendants, "through the Internet postings, manifest[ed] an intent to target and focus on Virginia readers." *See id.*

Nothing in the Complaint or in Plaintiff's briefing supports that Defendants intended to purposefully direct in a substantial way their electronic activity toward Virginia, or to target and focus on Virginia readers. Turning to the "general thrust and content" of Defendants' websites

8

and social media accounts, *see Young*, 315 F.3d at 263, there is no indication in the record that Virginia was the focus or a focus. Indeed, by Plaintiff's own admission, the Breggins' website has a purportedly national character, focusing on perceived threats to the nation as a whole. *See* Compl. ¶ 4. Similarly, the Breggins' website and broadcast, entitled "America Out Loud," is also focused on national rather than Virginia-specific issues. *See* Compl. ¶ 4. The allegations about Defendant Dr. Jane Ruby's online presence and statements similarly reflect a national "thrust and content." *See* Compl. ¶ 5. In sum, it appears that "[t]he websites" and social media accounts "are not designed to attract or serve a Virginia audience." *See Young*, 315 F.3d at 263.

Plaintiff tries to bolster his personal jurisdiction argument by alleging that Defendants' social media accounts and websites have Virginia subscribers and solicit donations from their Virginia subscriber base. *See, e.g.*, Compl. ¶ 4 (alleging that the Breggins use their "subscription radio and internet shows" that are broadcast "to listeners and viewers in Virginia and elsewhere"); *id.* ¶ 5 (alleging that the Dr. Jane Ruby Show has "over 436,000 subscribers in Virginia and elsewhere," and making similar representations about subscribers to her other social media accounts "from Virginia and elsewhere"). Although these allegations purport to provide information about Virginia connections, they include no facts to show anything other than that these messages and statements were merely posted and accessible online in Virginia—as well as anywhere else in the world—which is insufficient to support a showing of specific personal jurisdiction. *See Young*, 315 F.3d at 263 ("Something more than posting and accessibility is needed.").

The Court must also examine "the specific articles [Plaintiff] complains about to determine whether they were posted on the Internet with the intent to target a Virginia audience." *See Young*, 315 F.3d at 263. Here, Plaintiff argues that "Virginia is the 'focal point' both of

9

Breggins' and Ruby's publications and of the harm suffered." *See* Dkt. 49 at 7. But Plaintiff's argument about the publications is not supported by the allegations themselves. None of the allegedly defamatory comments refers to Virginia. *See* Compl. at 11–14 (¶ 10). Nor has Plaintiff alleged any other Virginia-specific content at issue in Defendants' statements or social media accounts. The fact that they mentioned or referred to Plaintiff by name in the statements is not sufficient. *See Young*, 315 F.3d at 263–64.[4]

Plaintiff also asserts that Dr. Ruby's publication of a June 2023 video in the Charlottesville edition of *YourNews*, supports the exercise of specific personal jurisdiction. However, Dr. Ruby attested in response that she, as the "content creator," did not "select the methods or location of distribution nor the locale in which the information will be published," and as such, she "did not select, urge, opine, or otherwise intend to distribute any content on [*YourNews*] in or to Virginia." Dkt. 48 at 15 n. 14. Plaintiff has not argued, much less provided evidence to rebut, Dr. Ruby's attestation on that point.

Plaintiff's failure to establish personal jurisdiction in this case is further supported by this Court's decision in *Gilmore v. Jones*, 370 F. Supp. 3d 630 (W.D. Va. 2019). There, the Court concluded that several online videos and articles about the Charlottesville Unite the Right attack warranted the exercise of specific personal jurisdiction. But key to the Court's analysis was that "the 'general thrust' of [the defendant's] video and article … were sufficiently targeted at a Virginia audience." *Id.* at 654. There, the "exclusive focus" of the article "was a Virginia event and a Virginia citizen." *Id.* at 654–55. Another "manifested an intent to target a Virginia

---

[4] While Plaintiff mentions the Breggins' sales of "dozens" of books through their website, he does not appear to base any of his arguments for personal jurisdiction based on those sales, nor do the factual allegations in the complaint establish that any of the alleged defamatory comments were from the book.

audience by publishing an article and video focused on the political forces supposedly underlying a Virginia event and a Virginia citizen's role in that event." *Id.* at 657–58. By contrast, in this case the events at issue being discussed by Defendants were *national* in nature— the COVID-19 pandemic, vaccines against COVID-19, government regulations concerning COVID-19, and persons opposed to those government regulations (apparently part of a "health freedom movement"). *See* Compl. at pp. 11–14 (¶ 10).

      Finally, Plaintiff asserts that Defendants' alleged connections with a Mr. Alexander supports the exercise of personal jurisdiction. Alexander is alleged to reside in Virginia and be employed in Virginia by the Infectious Diseases Society of America. Compl. ¶ 6. In other words, it appears that Plaintiff is relying on a "conspiracy theory of jurisdiction," under which Defendants are "imputed with constitutionally sufficient contacts with Virginia through the actions of their alleged coconspirators." *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013). Plaintiff's allegations are not sufficient to establish this conspiracy theory of personal jurisdiction, especially in light of their failings to secure jurisdiction under the *Young* test. Plaintiff alleges that "[w]ithin a month of filing this lawsuit, the Breggins contacted Alexander and requested him to participate with the Breggins and Ruby in a 'war' on Dr. Malone." Compl. ¶ 6. That has resulted in Alexander, "between January 2023 and the present," repeatedly publishing "false and defamatory statements" about Plaintiff on social media. These conclusory and threadbare allegations fail to establish the conspiracy theory of jurisdiction. Moreover, "post-complaint contacts are not relevant to the personal jurisdiction analysis." *See Gather Workspaces LLC v. Gathering Spot, LLC*, No. 19-cv-2669, 2020 WL 6118439, at *4 (D.D.C. Oct. 16, 2020) (stating that this is the "law of [the D.C.] Circuit," which "rule enjoys widespread acceptance among out-of-Circuit authorities as well").

The facts of this case establish that Defendants' websites, social media posts, and other referenced online communications, as well as the allegedly defamatory statements and posts at issue, were aimed at a national audience. Defendants "did not post [these] materials on the Internet with the manifest intent of targeting Virginia readers," and as a result, they "could not have 'reasonably anticipated being haled into court in Virginia to answer for the truth of the statements'" they made online. *See Young*, 315 F.3d at 264 (quoting *Calder*, 465 U.S. at 790) (cleaned up). Accordingly, Defendants lack sufficient Internet-based contacts with Virginia to permit this Court to exercise specific personal jurisdiction over them. *See id.*

## Attorney's Fees

Defendants have pressed for an award of attorney's fees to be levied against Plaintiff, even after the Court indicated at oral argument that it anticipated dismissing Plaintiff's case against them for lack of personal jurisdiction. Defendants argue that attorney's fees should be awarded pursuant to Va. Code § 8.01-223.2, Virginia's anti-SLAPP (strategic lawsuit against public participation) statute, and pursuant to Fed. R. Civ. P. 11 and its Virginia state-law analogue, Va. Code § 8.01-271.1. *See* Dkt. 75 at 4–6, 10–11; Dkt. 76 at 3 (Anti-SLAPP argument); *id.* at 9–10 (arguing for award of fees under court's inherent authorities, Federal Rules of Civil Procedure).

As Defendants recognize, Dkt. 75 at 4–5, "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). The "American Rule" also applies in the Commonwealth of Virginia. *Bolton v. McKinney*, 855 S.E.2d 853, 855 (Va. 2021) ("Virginia follows the American rule on attorney's fees").

Notwithstanding the general rule, Defendants argue that an award of attorney's fees is warranted under Virginia's Anti-SLAPP legislation. Dkt. 75 at 6, 10–11; Dkt. 76 at 3. Generally, anti-SLAPP statutes "aim to weed out and deter lawsuits for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021). Virginia's statute provides, among other things, that "[a]ny person who has a suit against him dismissed or [a subpoena quashed] pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Va. Code § 8.01-223.2(B). Under the statute's plain language, for attorney's fees to be awarded, "the dismissal of the case must be pursuant to the immunity the statute confers." *Hutchens v. McDougal*, No. 1:21-cv-982, 2022 WL 2440347, at *3 (E.D. Va. July 5, 2022); *Fairfax*, 2 F.4th at 297 ("the Virginia fee statute authorizes an award whenever a suit is dismissed pursuant to anti-SLAPP immunity, whether at the threshold, at summary judgment, or after a trial on the merits"). Here, the Court has not dismissed the case pursuant to "the immunity provided by" Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2(B), but for lack of personal jurisdiction over Defendants. Any argument that Defendants' personal jurisdiction defense "is inextricably intertwined with [their] Anti-SLAPP motion" and is "part of … Anti-SLAPP immunity," is without merit. Dkt. 76 at 4. The analysis and legal issues involved between the statutory immunity conferred by the Virginia statute and a constitutional personal jurisdiction analysis are very different. *Compare Malone v. WP Co., LLC*, No. 3:22-cv-46, 2023 WL 6447311, at *8 (W.D. Va. Sept. 29, 2023) (holding that defendant was immune from plaintiff's defamation claims pursuant to Virginia Anti-SLAPP statute). Section 8.01-223.2 does not authorize a fee award.

Defendants also urge the Court to award attorney's fees pursuant to Fed. R. Civ. P. 11 and Fed. R. Civ. P. 54, as well as the Court's inherent equitable powers. *See* Dkt. 75 at 9; Dkt. 76

13

at 9–10. None support an attorney's fees award here. "In essence, Rule 11 imposes a duty on attorneys to certify, on the basis of a reasonable inquiry, that any pleading or paper they file with a district court (1) is not filed 'for any improper purpose'; (2) is 'warranted by existing law'; and (3) alleges facts that 'have evidentiary support.'" *Lokhova v. Halper*, 30 F.4th 349, 354 (4th Cir. 2022) (citing Fed. R. Civ. P. 11(b)); *see also* Fed. R. Civ. P. 11(b) (listing certifications made by signing a pleading, written motion, or other paper). Courts "have discretion to impose sanctions for violations of Rule 11," but in exercising that discretion, the court must determine whether "a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Id.* (citation omitted). "[A] sanctionable legal argument must have '*absolutely no chance of success* under the existing precedent.'" *Id.* (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)) (emphasis added).

Defendants point to "other similar lawsuits" filed by Plaintiff, as supporting a determination that Plaintiff "was on notice that his claims against [ ] Dr. Ruby and the Breggins" were without merit. *See* Dkt. 75 at 11. And Defendants are right to point to this Court's ruling in *Malone v. WP Company*, 2023 WL 6447311, as relevant precedent in that regard, as the Court dismissed Plaintiff's defamation lawsuit against the Washington Post in that case. *See id.* But, significantly, the Court did not award attorney's fees against Plaintiff in that case, noting various factors, including possible "risk of deterring other plaintiffs from bringing colorable claims," if attorney's fees were awarded. *Malone*, 2023 WL 6447311, at *9. In that case, the Court cautioned Plaintiff, as a filer of "repeated defamation cases," that if he were to "continue[ ] to bring defamation actions like those that have been dismissed, there will come a time when his lawsuits might fairly be deemed frivolous and awarding attorneys fees is appropriate." *Id. The Court reiterates those words of caution to Plaintiff*. That warning is emphasized, especially

14

given Plaintiff's statement on social media that he hoped his lawsuit would "have a chilling effect on corporate media." Dkt. 76 at 2. But in *Malone*, the Court was aware of this then-pending action, and did not conclude that an award of attorney's fees was warranted at that time. *Id.* at *9 n. 14. So too here. In view of Plaintiff's arguments in support of personal jurisdiction, which, though rejected, were not utterly frivolous, the Court finds there is insufficient basis to award attorney's fees pursuant to Rule 11. *See Sowards v. Switch Energy Co.*, 744 F. Supp. 1399, 1404 (W.D. Va. 1990) ("Even though the court rejects plaintiff's position on personal jurisdiction, plaintiff's argument is not so lacking in legal foundation as to warrant the imposition of sanctions.").

Undeterred, the Breggins effectively argue that they should not be precluded from an award of attorney's fees by the fortuity that the Court considered and ruled upon their personal jurisdiction motion first, instead of their motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Dkt. 75 at 14. Defendants filed separate motions to dismiss for lack of personal jurisdiction and for failure to state a claim. Having found the personal jurisdiction arguments clear, meritorious, and warranting dismissal, the Court need not gratuitously proceed to rule on additional, unnecessary arguments also in support of dismissal, when doing so would be entirely unnecessary to dispose of the case. Further still, it was no mere happenstance that the Court considered personal jurisdiction first. Defendants self-assuredly argue that, if "the Court considered [their] 12(b)(6) motion first, there would be no question that the defendants [would] ha[ve] prevailed pursuant to the immunity granted by that statute." Dkt. 75 at 14. Defendants overlook, however, real differences between the allegedly defamatory statements in this case, and those that were at issue in *Malone v. WP Company*. *Compare, e.g.*, Compl. ¶ 10 (stating that "Dr. Malone is the 'chief supporter' of Mattias Desmet, 'a leading apologist for political mass

15

murderers'", and that Dr. Malone "is a Hitler apologist and 'excuser'"), *with Malone v. WP Company*, 2023 WL 6447311, at *1–2 (Washington Post writing that Plaintiff's claims have been "discredited" and "bolstered a movement of misinformation"). Virginia's Anti-SLAPP statute's immunity does not extend "to any statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false." Va. Code § 8.01-223.2(B). In any event, however, there was no need for the Court to rule on the merits of the case and sift through the many allegedly defamatory false statements when it was clear there was no personal jurisdiction over Defendants in the first place. In the exercise of its discretion, the Court sees no basis to award attorney's fees in this action.[5]

## Conclusion

For these reasons, Defendants' motions to dismiss for lack of personal jurisdiction will therefore be granted, in an accompanying Order, to follow. Dkts. 44, 46. Because the Court will grant the motions to dismiss for lack of personal jurisdiction, it need not address Defendants' motions to dismiss for failure to state a claim, which motions will be denied, *without prejudice*, as moot. Dkts. 42, 46.

The Court will also deny Defendants' motion for an award of attorney's fees. Dkt. 74.

---

[5] To the extent Defendants argue that sanctions are also warranted under Va. Code § 8.01-271.1, the Rule 11 equivalent in Virginia, the Court limits its analysis to Rule 11 because this case was not originally filed in state court. *See Athena Constr. Grp., Inc. v. Smith*, No. 1:21-cv-396, 2023 WL 408910, at *4 (E.D. Va. Jan. 20, 2023); *Tatoian v. Andrews*, No. 7:14-cv-484, 2016 WL 613009, at *4 n. 7 (W.D. Va. Feb. 12, 2016). To the extent Defendants cite Fed. R. Civ. P. 54 to support an award of attorney's fees other than costs, the Court has concluded that the request is without merit and should be denied. *See* Fed. R. Civ. P. 54(d)(2); Dkt. 75 at 9–10. That is without prejudice to Defendants ability to seek costs in the usual course.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this  27th   day of March, 2024.

                                                    NORMAN K. MOON
                                                    SENIOR UNITED STATES DISTRICT JUDGE